(35 South. 839.)

No. 14,992.

STATE v. PASTOR et al.

(Jan. 18, 1904.)

ROBBERY—INSTRUCTIONS—HARMLESS ERROR —NEW TRIAL.

1. Defendants, charged with assault and robbery, requested the court on the trial of the case to instruct the jury as to the various verdicts it could render, including verdicts in all the grades of petty larceny.

The court had charged the jury as to the law governing robbery, and instructed them that, if they found that the money alleged to have been stolen was taken from the person without force or violence, or putting the person from whom it was taken in fear, they could return a verdict of petty larceny. It refused to charge as to the lower grades of petty larceny on the ground that there was nothing in the evidence which called for such a verdict. Defendant reserved a bill of exceptions.

2. Defendants in a motion for a new trial assigned as a reason therefor that they had been prejudiced by the action of the court in refusing to give the special charge which had been asked for. The court adhered to its original grounds of refusal, and urged that the refusal to charge, if technically error at the time, was not prejudicial, as the jury trial found the accused guilty of robbery, which excluded all consideration of the amount taken from the person.

The complaint furnishes no ground for reversal. Had the jury returned a verdict of petty larceny, it was still in the power of the court, on application of the accused, to have had the jury sent back to designate the particular degree of petty larceny which they had intended to cover by their verdict.

3. The granting of a new trial falls particularly within the province of the trial judge, and his action will be sustained unless clearly wrong.

(Syllabus by the Court.)

Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

Edward Pastor and Joseph O'Brien were found guilty of assault and robbery, and appeal. Affirmed.

Generelly & Doyle, for appellants. Walter Guion, Atty. Gen., Chandler C. Luzenberg, Dist. Atty., and Samuel A. Montgomery, Asst. Dist. Atty., for the State.

Statement of the Case.

NICHOLLS, C. J. The defendants were found guilty of assault and robbery, and sentenced to imprisonment at hard labor in the State Penitentiary; Pastor for a period of three and O'Brien for a period of eight years. They appealed.

There are two bills of exception in the record. The first bill (evidently written up after the rendition of the verdict) was taken to the refusal of the court to charge the jury as to the various grades of larceny which might be rendered on the information. It recites that, the court having charged that a verdict of larceny might be rendered on the information if it found that neither force nor violence had been used, counsel for defendants requested the trial judge to charge the jury that, if the amount stolen, taken, and carried away without putting the prosecuting witness in fear, and without the use of force, was less than $20 and more than $5 or less than $5, they might render a verdict of "Guilty of petit larceny of an amount more than five dollars or less than twenty dollars," or "Guilty of petit larceny of an amount less than five dollars." The court states that it refused to give this charge, and assigned as its reasons for refusal that it had already explained to the jury the law governing robbery, and had told them that robbery was a kind of larceny; that it was larceny from the person by using force or violence or by putting in fear; and that, if they found that neither force nor violence

was used, and that the party was not put in fear, but that money had been taken from the defendant (prosecuting witness), in that case they could return a verdict of "Guilty of petit larceny."

The accused, through his counsel, then asked the court to charge as to the minor larcenies involving amounts less than $20. This the court refused to charge, because the evidence showed that $42 had been taken from the prosecuting witness, and nothing less than that, and the defendant was guilty of petit larceny of a sum over $20 or not at all. But, besides this, even if the court were wrong in its ruling, the accused suffered no injury, for he was found guilty of robbery, and not of petit larceny. Defendants' counsel excepted, attaching to their bill as part thereof the evidence taken on the trial. Defendants' counsel insist that there was testimony in the record going to show that they might have stolen less than $20. They say: The prosecuting witness, in answer to the question, "Did you have any money?" replied: "Yes, sir; they took about forty-two dollars. Then the policeman came." That one witness testified that the prosecuting witness was in his barroom at about eleven and a half o'clock on the night of the occurrence, and tried to borrow a dollar. The Police Officer Merritt, who made the arrest, testified that he had not lost sight of the accused from the time that they left the spot where the Chinaman (the prosecuting witness) was until their arrest, and that Police Corporal Burke testified that when they were taken to the police station after arrest, and searched, less than $1 was found in their possession.

The second bill of exception was taken to the refusal of the court to grant defendants a "new trial." The grounds assigned for a new trial were: First. That the verdict was contrary to the law and the evidence.

Second. That there was error to the prejudice of the accused in the refusal of the court to charge the jury as to the various grades of petty larceny.

Third. That since the trial of the case defendants had discovered new evidence, which if it had been submitted to the jury, would have caused said jury to return a verdict of not guilty as defendants verily believed, and

that, although defendants had used due diligence, it was impossible for them to have discovered or produced said evidence on the trial, as was shown by the affidavits which were annexed to their bill and made part thereof. The court refused a new trial, and defendants excepted, making this motion for a new trial and the affidavits, bills of exceptions, a copy of the evidence taken on the trial, and the special charge requested by the defendants part of their bill, and annexing the same to it. The trial judge, in his addendum to this bill, stated that he attached as part thereof his reasons for denying the new trial thereof.

In these reasons the court stated:

"The second ground for a new trial was that there was error to the prejudice of the accused in his refusal to charge the jury as to the various grades of petty larceny, and that they could return a verdict of guilty of one of the lesser grades if, in their judgment, the evidence justified it. The court had already given its reason for the refusal to charge the jury as requested. There was no evidence to show that the prosecuting witness was robbed of any less sum than forty-two dollars.

"The accused claimed that he was entitled to the charge, because there was the testimony of a barkeeper to the effect that on that night at ten o'clock the prosecuting witness had borrowed from him one dollar. This was denied by the prosecuting witness, but, even if it were not denied, it did not show that this was all the money that the prosecuting witness had on his person. The money was charged to have been borrowed at ten o'clock at night, and the robbery took place at two o'clock in the morning; but as a matter of fact there was no evidence at all to show that the prosecuting witness had any money less than forty-two dollars, and that he was robbed of any less amount than forty dollars, and the court therefore would not have been justified in charging the jury upon larceny of a sum less than twenty dollars. But, even if the court had been in error in refusing the charge as requested, the accused suffered no injury, because they were not found guilty of larceny, but of robbery.

"The third ground upon which a motion for a new trial is asked is that new evidence

had been discovered since the verdict, which tends to establish the innocence of the accused, and which, if it had been presented to the jury, would have had the effect of convincing the jury of the innocence of the accused. It is true that they allege that they did not know, and were unable to learn, of this evidence before the trial of the cause, and that they had used due diligence, and had made every effort to discover the evidence in their favor; but the court is not at all satisfied, if proper diligence had been used, that the newly discovered evidence could not have been found. The parties that are mentioned as the witnesses are:

"First. Mrs. T. Harang. She testified that she knew Pastor and O'Brien, and had known them for a great many years, they having lived in the same neighborhood for a long time, and she being on visiting terms with some of the friends and relatives of the accused.

"The other witness is one James J. Connell, who testified about to the same effect as the witness above named. He knows the accused, has known them for a long time, and says he knew of their arrest only after their conviction. This fact is the more remarkable because on the very day of the robbery the witness was in Bollick's restaurant when the policeman walked into the restaurant with the prosecuting witness for the purpose of having him to identify the guilty parties; and yet, notwithstanding this fact, and notwithstanding the fact that he knew the accused, and had known them for a long time, he never found out that they were arrested, and learned of it only after their conviction. He was known to the accused, and his testimony would have been procured if proper diligence had been used.

"The next is the testimony of one John Callery. He testified to the same effect as Mrs. T. Harang. He also knew Pastor and O'Brien. The accused has known them for a long time. Had worked with them in the cotton or along the river, and yet never discovered their arrest until after their conviction.

"I consider that these people, being of the same class and social standing as the defendants in the case, having known them for a number of years, that, if proper diligence

had been used, the facts now alleged by them could have been established on the trial.

"The evidence in this case for the state shows that the prosecuting witness, Sing, was assaulted and beaten into unconsciousness at three o'clock in the morning on St. Mary street, opposite the Magazine Market, and was dragged into a dark alley in the middle of the block. When the alarm was given, Officer Merritt walked into the market, and saw Pastor and O'Brien leaving the place where the assault and robbery had taken place (which was about in the middle of the block), and walked in the direction of Magazine street. After walking about half a block, they returned to Bollick's restaurant and entered. That he thereupon took Sing, the prosecuting witness, to the restaurant to identify the parties who had committed the assault upon him, but that his condition was such and he was suffering so intensely that he could not on that morning identify the parties. Sing the next day identified the accused as having made the assault on him. A witness by the name of Luetz testified that he was passing by the alley on St. Mary street, which alley was very dark; that he heard therein a gurgling sound issuing from somebody that was held down on the pavement of the alley by O'Brien; that he identified O'Brien by his general appearance and his clothes, as he did not know him personally previously.

"William McConnell testified that he saw Pastor and O'Brien in the restaurant both before and after the robbery. The newly discovered evidence is to establish that Pastor and O'Brien were not present at the scene of the robbery, but that they had been met on Magazine street, going towards St. Mary street, between the hours of two and three o'clock in the morning, and that when the witnesses reached the corner of St. Mary street they saw Pastor and O'Brien going in that direction; that they heard the police beat a stick on the pavement.

"In my opinion, even if this testimony had been offered on the trial of the case, it would in no wise have changed the verdict. As an alibi, it is of the weakest kind.

"Mrs. Harang and John Callery depose to a state of facts which, in my mind, is exceedingly wonderful. They state that when

they turned the corner of St. Mary and Camp streets three men were running out St. Mary street, and bumped against Mrs. Harang with such force that they nearly knocked her down; that they turned to look at them; and that they ran down Camp street, one of them saying, 'I think we fixed that Chinee son of a bitch.' This last expression throws such doubt upon the probability of the statement that, in my opinion, it destroys the balance of it, for no criminal, after committing so outrageous an offense as that charged against these accused, would have loudly proclaimed on the street the commission of the act, without any reason for making such a statement.

"They depose that they continued down St. Mary street towards Magazine, and that they met Edward Pastor and Joseph O'Brien turning the corner from Magazine street, going towards Bollick's restaurant.

"The next deponent is James J. Connell. His testimony is to the effect that when he reached the corner of Richard street he saw Edward Pastor and Joseph O'Brien turning from Felicity street to the woods side of Magazine street, and walk out as far as St. Mary and turn in St. Mary to Bollick's restaurant; that he followed about forty or fifty feet behind them, and went into Bollick's place; and that it was at that time that the policeman came with the Chinaman to find out if the parties who committed the robbery were there.

"In my opinion, this testimony would in no wise have changed the verdict of the jury in this case.

"The testimony, when offered as newly discovered evidence, must not be cumulative, and must be such as would, in the opinion of the court, have secured a different result. State of Louisiana v. Lejeune et al., 52 La. Ann. 463, 26 South. 992; State v. Charles J. Hendrix, 45 La. Ann. 500, 12 South. 621.

"The newly discovered evidence offered in this case to my mind is most unsatisfactory, and does not carry with it the stamp of verity. The deponents knew and know the accused in this case; had known them for a long time; some living in the immediate neighborhood; some had worked on the levee in about the same kind of occupation as the accused, and yet had never heard of the case until their conviction. To me it seems improbable that such men, having the same surroundings as the accused, moving in the same sphere, could have remained incog. until the very moment of the rendering of the verdict by the jury.

"Had proper diligence been exercised, all these facts could have been ascertained before the trial, and it is now too late to ask that the case be reopened for the purpose of allowing the testimony to be offered, especially when, in the opinion of the court, it would not affect the result.

"The motion for a new trial is refused."

### Opinion.

The action of the court in refusing to charge the jury as to the lower grades of petty larceny and to instruct the jury as to their right to bring in a verdict against the accused of guilty of one of these lesser grades has been twice brought to our attention: First, in a bill of exception reserved on the trial at the time the charge was requested and refused, and later in a second bill taken to the refusal of the court to grant a new trial on the ground assigned therein, and a claim that the defendant had been prejudiced by the refusal of the court to give the charge when it was asked for. The refusal of the court on the trial of the case to give the requested charge was after all the testimony had been adduced, and under its appreciation of the condition of that testimony, but before the jury had returned a verdict. The refusal of the court to consider its action on this subject as being error, or reversible error, was after the jury had returned against the accused a verdict of "Robbery."

The charge of the court as given looked to a possible verdict of not guilty as to the crime charged of "robbery," and to a possible verdict of "Guilty of petty larceny."

The jury were afforded an opportunity under the instruction to them to have acquitted the accused of the crime of robbery, with which they were charged in the indictment, and fallen back upon a verdict of guilty of the minor crime of petty larceny, if, in their opinion, the evidence had failed to have shown a taking of the money by force or violence or a putting in fear. They found affirmatively, however, that the money had

been taken from the person of the prosecuting witness with force and violence, and returned them as guilty of robbery. Under such circumstances the amount of the money so taken played no part whatever in determining the guilt of the accused, or in affixing to the crime its punishment. This verdict of the jury, coupled as it is with the refusal of the trial judge to set it aside, makes it absolutely certain that there was nothing in the evidence which could have justified or warranted a verdict of "petty larceny" of any kind whatever, and that defendant has suffered no injury.

It is not error for judge to refuse to instruct the jury in respect to the minor offenses which might, under some circumstances, be included in the offense charged, where there is no evidence whatever upon which any verdict could be properly returned except one of guilty, or one of not guilty, of the particular offense charged. See Clarke's Criminal Procedure, c. 12, subd. "Instructions or Charge of the Court to the Jury," and the numerous authorities cited; State v. Powell, 109 La. 727, 33 South. 748.

The appreciation of the trial judge of the situation as to the evidence adduced was fully vindicated by the subsequent verdict of the jury.

The accused could not possibly have suffered injury by the court's refusal to charge as requested. If the jury, under the instructions given them, had in fact returned a verdict of guilty of "petty larceny," it would still have been in the power of the court, on application of the accused, to have sent the jury back to the jury room to designate the particular degree of petty larceny which they had intended to cover by their verdict. State v. Jessie, 30 La. Ann. 1172.

We find no good reason for setting aside the verdict of the jury, and the judgment based thereon, by reason of the action of the court in refusing a new trial. The trial judge has seen and heard the witnesses who testified on the trial, and was in a much better position than this court is to judge as to what would be the probable effect of the alleged newly discovered evidence in the event of a second trial. The granting of a new trial falls particularly within the province of the trial judge, and his action will be sustained unless very clearly wrong. The verdict of the jury and the judgment of the court based thereon, herein appealed from, are affirmed.