152 So. 546

## STATE v. BARTON et al.

No. 32506.

Nov. 27, 1933.

Rehearing Denied Jan. 2, 1934.

Barnette & Barnette, of Shreveport, A. A. Moss and John J. Peters, both of Winnfield, and Atkins & Stewart, of Hope, Ark., for appellant.

Gaston L. Porterie, Atty. Gen., James O'-Connor, Asst. Atty. Gen., Harry Fuller, Dist. Atty., of Winnfield, and V. M. Mouser, Asst. Dist. Atty., of Columbia (James O'Niell, Sp. Asst. to Atty. Gen., for the State.

BRUNOT, Justice.

Gip Barton, James Hall, and Charlie Chapman were indicted by the grand jury of Winn parish with the robbery of the Bank of Winnfield. Chapman was a fugitive from justice at the time of the trial. The other two were tried, convicted, and sentenced to the State Penitentiary for the following terms: Hall for not less than nine nor more than fourteen years; and Barton for not less than seven nor more than twelve years. Barton alone appealed. The appeal presents only one bill of exception. It was reserved to the overruling of Barton's original and supplemental motions for a new trial. The usual averment that the "verdict is contrary to the law and the evidence" is made, but the motions for new trial are based upon alleged newly discovered evidence, consisting of an attested statement made by Barton's codefendant, James Hall, two days after the trial of the case. The substance of the reasons given by the judge for the overruling of the motions for a new trial are that practically all of

Hall's statement is cumulative testimony, and that Barton did not exercise due diligence to obtain it before or during the trial, and that Hall's statement is incredible and suspicious. The statement and the court's per curiam to the bill of exceptions are lengthy, but we think it advisable to quote them:

Hall's Statement. Trans. pp. 44, 45, 46.

"Shreveport, La., June 9, 1933.

"To the Honorable Judge of the 8th Judicial District Court of Winn Parish, at Winnfield, Louisiana. ·

"That I, James 'Slim' Hall, Being a Defendant in said Court, Hereby makes the following statement in behalf of the defendant Gip Barton, being jointly charged with me, 'Slim' Hall, on a charge of Bank Robbery.

"I, James 'Slim' Hall. Exonerates The defendant Gip Barton of any and, all connections with said Robbery, (to wit. The Bank of Winnfield). I further state that the State errored in Convicting said defendant, Gip Barton.

"I, James 'Slim' Hall. Left the State of Oklahoma, the town or, City of Oklahoma City, Okla. On the 25th, day December, (One Thousand N Nineteen Hundred And Thirty Two.) 1932, A. D. And Came to Longview, Texas. And met two Companions there, And, stayed that night in the town or, City of Longview, Texas.

"I James 'Slim' Hall. With my Companions left Longview Texas. And Proceeded to Alexandria, La., Arriving there between three or three thirty on the same afternoon of December, 26th, 1932, A. D. Spending the night in Alexandria, La.

"I, James 'Slim' Hall. Left Alexandria the next day the 27th, day of December, 1932, A. D.· And Came to the Town or, City of Winnfield, La., Arriving there about five O'Clock in the afternoon. With my two Companions we proceeded to look the situation over. Driving out the Calvin Road as presucribed in the testimony of the State. Driving upon and down the Road until we were satisfyed with the get away route. We then returned to Alexandria, La,. Spending the night there. On the following Morning the 28th. Of December, 1932, A. D. I, James 'Slim' Hall. Left Alexandria, La. Adn went to Melville, La,. And met another Companion And His Lady Friend, In a 1932 Model Chevrolet Roadster Maroon Colored with Black Plain Wheels And, A Yellow Strip bordering on the top trimming the top of the door of the Car. Having 1931 Licens Plates on Said Car. And being a Car that was supposed to be registered in the State of Mississippi, Had as proof, Mississippi Licens Plates on said Car. I do not remember whether or not the Car had any other distinguishable assessories other than a Kakai Top. We, then returned to the said Town or, City of Alexandria reaching there about one O'Clock in the afternoon, We Ate Lunch in Pineville, Louisiana. Then He and, I, James Hall left the Lady in Alexandria, La,. And drove Winnfield, La,. For the purpose of famerlizing my Company that I met In Melville, La,. With the Get Away route. After driving around the Town for some time we proceeded back to Alexandria, La,. Arriving there about nine O'Clock in the night.

"The Five Of us met and, discussed the plans of the Robbery of the Bank for about three hours and, we then retired for the night.

On the following Morning December 29th, 1932 A. D. We, The Five of us left Alexandria, La,. About Seven O'Clock and Came to Campti, La,. And Proceeded to the Town or, City of Winnfield, La,. I, James 'Slim' Hall left the Man and his Lady Friend on an out Road about three or possibly four miles out of Calvin, La,. A Road that turns to the right, I, James 'Slim' Hall with the Other two Man Came on to Winnfield, La,. Driving on Through Winnfield to a flowing salt Water Well About Three Miles South Of Winnfield, We again went over the details of the said robbery. About twelve O'Clock we drove back to Winnfield, Stopping by the side of the Bank —I, James 'Slim' Hall with one Companion entered the Bank of Winnfield, Drawing concealed Weapons on the two employees of said Bank forced them to lye on the floor of said Bank while the robbery was in progress. During the said robbery a negro and white Man entered the Bank, Likewise they were forced to lye on the flor of said Bank. After robbing the Bank we forced three Men into the Vault and, Locked the Door. Taking in company with us one employee of said Bank.

"After the said robbery we drove back out the Calvin Road passing a Road Machine, as, percribed in the States Testimony, we continued on up the road we passed the Roadster that was earlier percribed in this statement parked on the Road about three Hundred Yards from where the abandoned Car was found. As we continued by the Roadster the Man and the Lady, 'If you Please' Blew their horn at us for some reason I did not know at the time. But when I and, The other two abandoned the Car we discovered that there were some negroes working on a Truck a few yeard's farther out. They had discovered this unfortunately accident as they came down the road toward's the Road Machine and they continued on down the Roae to try to stop us before we reached the percribed locatation and was parked there as in confab about three hundred yards I submit from the spot where the Car was found. They immeditally came on behind us and, as they stopped the Car we were ready to Board the Chevrolet Roadster as has been percribed in this statement, Two of the Men retiring to the turtle shell of the roadster and I James 'Slim' Hall retired to the seat setting between the driver of the Car and the Lady, The Driver of the Car Fastened the turtle shell down on the Roadster and retired to the seat of the Car as did the Lady. We then continued on up the road in the direction of Calvin, La,. Turning to the left as percribed in this statement before and continuing on out that Road for about four or five miles staying in the woods the remainder of the day we left there that next morning at approximately Four O'Clock and drove to a Cousin's Home of Mine about fifteen miles I presume from Coushatta, La,. In the vicinity of Hall's Summit, La,. Staying there all the next day, the 30th, of December, 1932 Arriving at this destination about six O'Clock the same Morning, we ate Breakfast at Pet Dixons House and Later went to the back side of the field and stayed there all that day. About seven O'Clock that evening the same Roadster came back and picked up the Men That actuall participated in the robbery of the Bank of Winnfield.

"I, James 'Slim' Hall makes this statement for the purpose of exonerating the defendant

Gip Barton of any and all participation in the said robbery of the Bank of Winnfield.

    "[Signed] James 'Slim' Hall

 "Signed this 9th day of June, 1933 A. D.

"Filed 6/12/33

    "C. F. Walsworth. Clerk.

"Filed in evidence 6/19/33"

  The Court's Per Curiam.

"The Court overruled a motion for a new trial filed in this case by the defendant Barton for the following reasons:

"First: That practically all of the newly discovered testimony of Witness Hall as stated in the affidavit is cumulative.

"Second: The Defendant, Barton, never used due diligence to obtain this newly discovered evidence, either before or during the trial, but waited until after the verdict. He has not alleged any facts or shown any statement of facts to the Court that he used due diligence to obtain this testimony.

"Third: That the statement made by Hall in his affidavit is incredible and suspicious.

"Those two defendants were indicted jointly and tried jointly; both were convicted as charged. The evidence of the State showed that during the morning before the robbery, that the bandit car and a chevrolet sport model coupe, answering the description as to the one owned by Barton, inspected the road west of the Town of Winnfield towards Calvin about six miles from Town, and on the inspection trip one time the Chevrolet Sport Model Coupe was in front of the bandit car and on the other time this chevrolet coupe was in the rear of the bandit car, and one witness recognized Barton was the driver of the Sport

Model Coupe. Other witnesses in the morning and as the Bank robbers left saw the Chevrolet Sport Model Coupe, recognizing it and it answered the same description was the one Barton owned. There was no question but that Barton was in the Town of Winnfield on the day of the robbery and that he left town about five minutes after the robbery was completed. Men working on the road stated that the bandit car came by them and in three or four minutes a Sport Model Coupe of the same description that they had seen with a man and two women came by. The bandit car slowed down at this place where the men were on the side road but seeing the men on this side road, moved on further. The Chevrolet Sport Model Coupe came by as above stated and almost stopped on reaching the place where the road crew was resting, but on seeing them immediately drove on. Immediately after passing, the horn of this Chevrolet Sport Model Coupe blew three or four times. The bandit car took a side road about half a mile further on. Immediately after driving off the gravel road some distance, three negroes who were working about a hundred and fifty yards from the gravel road saw the bandit car drive up and stop near where they were at work. As the bandits were getting out of the bandit car, a car answering the description of the Chevrolet Sport Coupe stopped at the end of this side road, and hollowed for the men to hurry up and come on and the men rushed up and got in the car and left, and they stated that no other car after the bandit car turned into the side road, came by until the Chevrolet drove up and stopped. No other car passed until the Sheriff reached the scene. Hall's

statement agrees with all this except he states that it was another man and woman. Barton's wife and sister said they didn't stop and the only way that Hall's testimony varies from the State is that it was not the Barton car that picked them up and the Court for that reason thinks that it is only cumulative.

"The evidence during the trial of the case showed that Hall shortly after the Bank of Winnfield had been robbed and after Barton had been arrested for being implicated in said robbery bought this chevrolet sport model coupe from Barton, and while they were being tried in Winnfield they were in their cell together and Barton had every opportunity to discuss with Hall the case as to whether Barton was in it before Barton was brought to Louisiana and even while he was in the same cell with Hall during the trial of the case.

"There is no allegation in the motion that Barton ever in any way talked to Hall and tried to get Hall to tell what he knew if he knew anything in regard to Barton. By Barton being silent and never asking the Defendant Hall anything about the Bank robbery and about whether he knew anything about he, Barton, being in the Bank robbery, he failed to show due diligence and he failed to get all the information from the Defendant Hall that he might have obtained. While it is true that Hall could not have been made to take the stand and while it is true that Hall could have told the defendant Barton that he knew nothing about it, there is nothing in the record to show that Barton made any effort at any time since he had ample opportunity to see about it and to inquire of Hall as to who the party was that hauled

them away from the side road at Calvin and there is no allegation of facts in the motion or no testimony in the record to show that the Defendant Barton put forth any effort whatever to obtain, before the trial or during the trial, evidence that he now seeks a new trial as on newly discovered evidence. To our minds there is not the reasonable, legal showing of due diligence exercised by this Defendant as is required by law to secure a new trial on the ground of newly discovered evidence.

"The evidence offered by Hall is incredible and very suspicious for the reason that he never took the stand during the trial of the case; He never offered any evidence in his own behalf during the trial of the case and from the testimony there was no question that there was any place of escape for him and if he intended to voluntarily make a statement he could have then made such a statement or at least have told Barton about same. It is further suspicious and incredible as he fails to disclaim the name of the man and lady, who, he states, he secured at Melville. This is so suspicious that it impresses the Court that Hall wishes to take the "fall" and let Barton by, by his taking the blame.

"There was sufficient evidence to warrant the verdict of conviction of Barton. It was circumstantial but strongly linked and the Court is satisfied that no injustice has been done."

█ Applications for new trials, when based on the ground of newly discovered evidence, should be received with great caution. State v. Washington, 36 La. Ann. 341; State v. Williams, 38 La. Ann. 361; State v. Johnson, 170

La. 1050, 129 So. 633; State v. Lee, 173 La. 966, 139 So. 302.

■ All motions for a new trial rest within the judicial discretion of the trial judge, and his rulings thereon will not be disturbed by an appellate court except for an abuse of judicial discretion. There is a long list of cases so holding in 2 La. Digest, p. 666. See, also, article 516, Code Cr. Proc.

■ If the application for a new trial is made on the ground of newly discovered evidence, the refusal of the application will not be interfered with even though the judge bases his ruling on his refusal to believe the affidavit of the alleged newly discovered witness, unless it clearly appears that the judge exercised his discretion in an arbitrary or unjust manner. State v. Williams, 38 La. Ann. 361; State v. Dunn, 41 La. Ann. 610, 6 So. 176. In the Williams Case the court said: "The greatest reliance is placed on the trial judges in refusing new trials in criminal causes, and it would be an unwise restriction to hold that they shall not take into account their belief that false-swearing has been resorted to in order to break a conviction and obtain a new trial."

In the case of State v. Charles et al., 130 La. 683, 58 So. 509, 510, Charles and two co-defendants were charged with the theft of a horse. Charles pleaded guilty. His two codefendants were tried, and one of them, Adam Pierre, was convicted. Pierre moved for a new trial on the ground of newly discovered evidence, to wit, the affidavit of Charles, "that he alone was guilty of the theft; that the accused, Adam Pierre, is entirely innocent." In that case the court said:

"This court twice recently decided that the appellate court will not set aside the refusal to grant a new trial unless clearly wrong, and that such motions generally are addressed to the sound discretion of the trial court. State v. Pastor, 111 La. 717, 35 So. 839; State v. Jones, 112 La. 980, 36 So. 825.

"With these decisions before us, the cause urged by defendant does not appeal to us as one in which we should grant relief. Trial and acquittal would become easy if a defendant were allowed to go on with his trial, examine his witnesses, declare to the court that he has no other witnesses, and thereafter produce the affidavit of one with whom he was prosecuted, with whom he was in jail, as ground for a new trial. The district judge doubtless had good reasons not to attach importance to the affidavit. We cannot say that he erred."

■ In this case the trial judge says in his per curiam that the evidence shows that Barton had every opportunity to discuss the case with Hall before he was brought to Louisiana, and that they occupied the same jail cell during the trial of the case.

He also says, in language that seems to admit of but one construction, viz., that he was impressed with the falsity of that part of Hall's affidavit exonerating Barton from any complicity in the crime.

It appears that all the witnesses Barton desired were present, in court, and all he desired to call were sworn and testified during the trial.

Finding that the statements of fact, in the judge's per curiam to the bill of exception, are borne out by the record, and with the

cases cited supra in mind, especially the excerpts from the Williams and Charles Cases, we cannot hold that the judge erred in overruling appellant's motions for a new trial. We therefore find that the bill reserved to that ruling is without merit.

For the reasons stated, the verdict and sentence are affirmed.