BREAUX, C. J.
An indictment filed on the 7th day of April, 1907, charged the de *565 fendant with haying committed murder by taking the life of Jack Hadnot.
The accused was tried on the 10th day of April, 1907. The jury returned a yerdict against him of guilty without capital punishment.
From the sentence imposed he has taken this appeal.
Requested by the district attorney, after the jury had been impaneled, and before any ■of the witnesses had been heard, the court ordered the jury and the accused to go to the scene of the homicide. This order was given before any testimony had been heard.
No objection was urged by the defendant.
The jury was accompanied by two deputies, one preceding the jury and the other following; and after the jury and these deputies the accused and the sheriff followed.
The judge did not accompany the jury.
The district attorney made the request that the court order the jury and the accused to view the place of the homicide. This order was given in open court. The judge was ask-*d if he intended to accompany the jury. He replied that there was no necessity.
At the place of the homicide members of the jury walked over the ground and entered the house. At the door they met a person who was inclined to talk. The deputy directed him not to talk to the jury. Thereupon he walked away. The jury remained in the house about five minutes, and during that time some of the members walked into the rooms. They were always within sight of the deputies. The jury talked to each other. One of the jurors was heard to say to another:
“Here is where he fell.”
This juror said as a witness :
“I do not know who it was that spoke.”
The accused while the jury was in the house was in charge of the sheriff on the outside of the house some little distance, about 30 feet.
Another ground of complaint is that the jury separated while at the place of the homicide.
We take up for decision the complaint growing out of the fact that the judge did not accompany the jury to the place of the homicide.
The application for the view of the scene of the crime having been made in open court, and the judge having announced that he would not accompany the jury and the accused, no objection having been made, no bill of exceptions taken, it is scarcely possible, under our jurisprudence, to hold otherwise than that it was too late to urge these objections in the motion for a new trial.
The defendant was present when the place was pointed out to the jury. He might, if needful, have corrected any error by testimony after the return of the jury. Nothing shows that appealable error was committed by the jury while they were at the house. Had the judge been present, and had not ruled at all in regard to any question, it would have been as if he had not been present. 1-Iis presence would not have accomplished anything.
There are no direct decisions upon the subject in the jurisprudence of the state. In State v. Bertin, 24 La.' Ann. 46, in which it is mentioned that the judge was absent, the controlling question was not the fact that he was absent. The fact of his absence was only referred to incidentally.
There are decisions in other jurisdictions. They are as diverse as decisions can be upon the same question of law.
There is no necessity in this .case of passing upon the point directly. Doubtless it would be better and safer if the judge were to accompany the jury to see that no errors be committed. We do not think that it is a sine qua non for the validity of the verdict.
*567 The following was one of the decisions that we have had occasion to consult. It is favorable to the view here expressed. Benton v. State, 30 Ark. 328.
In another of the cases in another jurisdiction it was decided that on a motion for a new trial the absence of the judge from a place was not legal ground of complaint. State v. Hartley, 22 Nev. 342, 40 Pac. 372, 28 L. R. A. 33.
We rest our conclusion upon this point upon that ground. It was too late after verdict. Had the accused been acquitted, the verdict would have been entirely legal. He chose not to raise the point. He was represented by able and learned counsel.
We take up for decision the question of law raised by the defense that there was misconduct on the part of the jury while viewing the premises.
This ground also Was urged in a motion for a new trial.
We have seen that' they were in sight of the deputies all the time. They did not actually separate. They talked to each other, but nothing was said which indicated misconduct. One of them said, it is true, that this was the place where some one fell. Presumably he referred to the deceased. This fact of itself has no special significance, and cannot be taken as ground sufficient to reverse the judgment. It does not appear that anything was said or done calculated to prejudice illegally the cause of the accused.
Jurors are not expected to be dummies. They have the right to talk to each other, and to walk around, provided they remain in view of the deputies in charge, and do not break up the body of which they form a part.
The next objection on the part of the defense is that the accused was not taken inside of the house; that, while he was on the outside of the house, he could not see the members of the jury.
This is doubtless true. It does not appear* why it was that he was not taken within the-building. The fact that it was not possible-for him to see the jury at all times, that he-lost sight of them for five minutes while-they were viewing the place, is not fatal’, error.
No objection was urged at the time nor-after the jury returned to the 'courthouse.. It also was urged only on the application.! for a new trial.
An exception should have been taken at: the time of the occurrence, or as early a time-thereafter as possible. These points should. be brought up by way of bills of exception, taken in due time. State v. Maloney, 115 La. 498, 39 South. 539; State v. Henderson,. 113 La. 232, 36 South. 950; State v. Hauser,. 112 La. 313, 36 South. 396; State v. Michel,. 111 La. 438, 35 South. 629.
But we must say in regard to the last two< points — that is, the misconduct of the jury— and the fact that the defendant stood on the-outside with the sheriff for a few minutes-while the jury were in the house, that they are not irregularities affording ground enough to set aside the court’s action even if we-consider that the points have been timely urged. Not every incident of a trial can be-seized upon to predicate thereof a successful: defense. There must be error, something-showing that the law has been overlooked or-neglected, or treated with indifference. There does not seem to have been anything of the kind here.
As relates to the asserted misconduct of the-jury:
"We excerpt the following from 17 A. &. Eng. Ency. of Law, p. 1206:
“Failure to object to the misconduct of jurors-as soon as the knowledge thereof is obtained and the opportunity to object offers itself is a waiver of the right to object, and the objection cannot thereafter be presented as by a motion for a. new trial.”
*569 The foregoing meets with the approval in -the case of State v. Dorsey, 40 La. Ann. 743, 5 South. 26, in which the court said that:
“Counsel had an opportunity of tendering a ■seasonable objection to further proceeding with the trial before that jury, and did not. Conse•quently his complaint comes with indifferent grace after he has taken the chance of an ac- • quittal by the jury as constituted.”
There is also a presumption that the jury performed its duty. 17 Am. & Eng. Ency. -of Law, p. 1206.
“The proof must be clear and convincing that there was separation such as operated injuriously to the accused.” State v. Garig, 43 La. Ann. 365, 8 South. 934; State v. Richmond, 42 La. Ann. 301, 7 South. 459.
Xn concluding this branch of the case, we •desire again to state that in the nature of -things, while juries are examining premises, part of them, or all, may for a few moments be out of the view of the accused. This of Itself does not necessarily suggest that there •was something done during these few moments which was prejudicial. But, again, at should have been urged in time.
There was also objection urged by the defense in support of the motion in arrest of .judgment. This we think is disposed of by the well-known principle that procedure in ■criminal cases in arrest of judgment can only "be granted because of an error patent on the face of the record. The error complained of was not patent on the face of the record. It required evidence, and evidence is not receivable in support of a motion in arrest • of judgment. State v. Casey, 44 La. Ann. S69, 11 South. 583; State v. Pete, 39 La. Ann. 1095, 3 South. 284; State v. Miller, 36 La. Ann. 158; State v. Roland, 38 La. Ann. 18.
We are not permitted on the trial of such .a motion to examine and decide upon testi.mony adduced on trial.
And, lastly, upon this point, it was charged by the defense in the motion in arrest of .judgment that one of the jurors who sat upon the trial was a member of the grand jury.
The evidence shows that the grand jury upon which this juror served never examined into the case at bar, and that, in consequence, the objection must fall. He was not a member of the grand jury by which the indictment was found.
The last objection we are called upon to review and decide is that the judge refused to charge the jury as follows:
“That when one is placed in a situation and is attacked, and the attack would indicate to any reasonable man thus situated that he would suffer death or great bodily harm, it is not necessary for the person thus situated to wait until the execution of violence is committed, as otherwise the right to defend one’s life, under such circumstances, might prove to be of no benefit.”
Learned counsel for the defense states that:
“If a person in imminent danger of his life, were compelled to wait as a matter of law until his adversary had fired, the law of self-defense would be unavailing, except in instances where such adversary missed. A funeral service would take the place of a trial. It is an overt act, in a quarrel, for one of the disputants to run his hand into his bosom to draw a weapon, and the right of self-protection arises upon the commission of this overt act.”
It is a fair inference from the per curiam that the defendant had the benefit of the charge to the jury. The learned judge states in the per curiam
“That the requested charge was made in the presence and hearing of the jury, when I said that I had already charged same in substance.”
The requested charge was favorable to the defense. It went to the full extent, and the judge, after it had been heard by the jury, indorsed it by stating that he had already substantially instructed the jury as set forth in this requested charge.
The accused had no further ground to complain on that score. Besides we are informed by the judge that he read the Selfridge Case to the jury which is generally accepted as correct on the subject of self-defense.
There is no objection urged to the last part *571 of the charge, and. the objection to the first part is disposed of by the per curiam of the judge that is not contradicted.
There was an error in the date of the alleged homicide. It is not here urged as ani objection. The dates are not controlling in cases in which the defendant is charged with murder. It is certainly highly important, we must say, that the clerical department should verify especially the copies of indictments in the transcripts, and be very sure that all dates therein are correctly given.
For reasons assigned, it is ordered, adjudged, and decreed that the judgment is affirmed.