175 So. 838

**STATE v. O'DAY.**

No. 34342.

June 21, 1937.

Rehearing Denied July 8, 1937.

J. Bernard Cocke, of New Orleans, and John J. Brown, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and Charles A. Byrne, Dist. Atty., Conrad Meyer, Jr., and Herbert W. Christenberry, Asst. Dist. Attys., all of New Orleans, for the State.

PONDER, Justice.

The defendant, Jack O'Day, was convicted of manslaughter and sentenced to the penitentiary for a term of 6 years and 6 months to 20 years. The defendant appeals from the conviction and sentence.

During the trial, nine bills of exception were taken to the court's ruling by the defendant's counsel.

Bill of exception No. 1 was taken to the court's ruling permitting the taking of testimony at the scene of the crime.

The defendant contends that the court was without right to permit the taking of testimony of witnesses, to permit the jury to perform an experiment, and to permit the introduction of physical objects in evidence at the scene.

The per curiam of the trial judge to this bill reads as follows:

"This Bill was taken to the ruling of the Court, which permitted certain witnesses to testify at the scene of the crime.

The bill recites that the Court was in session at the scene of the crime; that all the officers of the Court, as well as the Jury, the defendant and his counsel, and the prosecuting attorneys were present. The Bill does not object to the visit to the scene, but objects to the taking of testimony at the scene. The scene was visited and testimony taken on motion of the State. All of the witnesses who testified at the scene of the crime with one lesser exception had already testified in full as State witnesses in the court room.

"The Court concurred with the State in the belief that it was necessary for a proper understanding of the evidence, and that the Jury may have a fair and better opportunity to pass upon the credibility of certain material witnesses, that the Jury be permitted to visit the locus of the crime, to-wit: the immediate rear of the L. & A. R. R. passenger depot, New Orleans.

"At the scene, the State recalled the witnesses in question, to-wit: one Leonard Cline, one Henry Hoffstadt, one Henry Viot, one Paul Salvaggio, and one Simon Palanque, and had them point out at the scene of the crime certain objects and places, the position of the automobile of appellant in which the deceased was shot; the place where her body was found, some forty feet from the car; the projecting water pipe anchored appellant's car to the spot and made it impossible for him to drive it from the scene, after the homicide; a view from the position of the water pipe, through the passenger station proper, revealing the uptown portion of

the witness Salvaggio's business place on the opposite side of S. Rampart Street, facing the station, and as stated, visible from the spot where the water pipe showed through the station, immediately before the fatal shot was fired.

"Appellant drove his car into the station premises from Saratoga Street. There is no vehicular passage way on the Railroad property, except two railroad train tracks. Pillars support a small shed extending the length of the rear portion of the station.

"A proper understanding of many vital and necessary facts, made a visit to the scene by the Court and jury a necessity, and only sworn and competent witnesses pointed out objects and positions and elucidated their testimony to the Jury at the scene. One witness testified at the scene, who had not previously testified in the Court room, to-wit: one Simon Palanque, an attache of the District Attorney's office, who was sworn and called upon to step off the distance between the water pipe and Saratoga Street, that the record might show what the Jury could see.

"This Bill also objects to the taking of testimony (in the presence of the Jury, the appellant and his attorneys, the prosecuting attorneys, the Court and all the attaches of the Court) in the basement of the Criminal Court building, where the Ford V-8 coupe of appellant which had been taken from its anchorage to the water pipe in the L. & A. Station by the police, was wrapped and sealed, and preserved and stored, to be used as evidence in the case.

"The deceased Ethel Hughes was shot once, the bullet entering the skull on the left side behind the left ear, travelled through the brain and made its exit on the right upper and forward temporal region of the head. This fact, plus the existence of some strands of hair, some bits of bone and some fragments of brain tissue, which the bullet forced against the right hand front top corner of appellant's coupe and which were not removed by the authorities from the automobile, showed conclusively that the deceased was shot after she had half risen from the seat of the automobile, half turned from the driver of the automobile, and was in the act of stepping out of the automobile, and making her exit from the coupe, just as the witnesses saw her attempting to do on South Rampart Street prior thereto. Because there were no witnesses to the shooting itself which occurred at 1:05 A. M. in this dark, lonely and deserted place, the defense properly took the advantage and gave the Jury to understand that it was encumbent upon the State to prove beyond a reasonable doubt that O'Day did not act in self-defense. The physical facts above stated showed conclusively that the woman was not shot by a person in self-defense.

"The exact spot of the interior of the car to which the hair, bone and tissue adhered, as well as the existence of the hair, bone and brain tissue at that place, was evidence delicate to handle, and a fact indispensibly necessary to the State's case. The best evidence, and as far as the Jury was concerned, the most satisfactory proof of this indispensible fact, and other equally necessary facts was the ocular demonstration of the car to the Jury. This portion of the appellant's coupe was not detachable and could not be brought into the court room. The court building construction made it impossible to bring the vehicle to any other place in the court building except the basement where it was. These considerations are emphasized because this Court believes that this bill of exception eloquently demonstrates how fatal to the cause of justice would be such a principle as appellant contends for.

"This Court respectfully believes that it was a matter of necessity as well as intelligent procedure that witnesses point out to the Jury the particular part of the automobile to which the evidence adhered; to have the Jury see for themselves how well the body of the car had been sealed to preserve the evidence in its interior, and consequently how genuine was this evidence, to have witnesses show where, in the interior of the car, the fatal bullet was recovered and other material features of the case so necessary for the Jury to have accurate knowledge of. * * *"

The defendant admits that it was in the discretion of the court to permit the jury to view the scene but objected to any evidence being taken at the scene.

There is no form of legislation in Louisiana that provides that the jury may be taken to the scene or to take testimony at that place. While on the other hand there is no form of legislation that prohibits it. The purpose of a trial is to ascertain the truth. It is impossible to bring the locus into the court and introduce it

in evidence. It is now well recognized, and there is no dispute herein raised to the contrary, that courts may take the jury to view the scene. Upon examination of the authorities of the different States, we find two theories as to whether or not a view of the scene constitutes the taking of evidence. One theory holds that a view of the scene does not constitute taking of evidence. The other theory, in our opinion conforming more to reason, is that a view of the scene does constitute the taking of evidence. We are of the opinion that the most reasonable rule is laid down in Wigmore on Evidence, vol. 3, p. 2329, § 1803:

"A view is allowable in criminal as well as in civil cases (Ante, § 1163). But is it necessary, under the hearsay rule and the constitutional provision sanctioning it for criminal cases (Ante, § 1397), that the accused be present at the view? This question has been answered by some courts in the affirmative, chiefly on the theory that otherwise the accused is deprived of the right to be confronted by the witnesses against him."

▬ This in effect holds that the viewing of the scene is taking evidence because it requires the presence of the accused. It is only reasonable that, viewing the scene, the physical facts and the circumstances surrounding the scene is as much the taking of evidence as taking the testimony of witnesses. A view of the scene without explanation might confuse the jury. Such confusion in many instances might operate against the defendant and do him great harm. Such confusion may defeat justice. The explanation of the locus would enable the jury to determine the real truth. Neither the State or the defendant have any right to complain at injury caused by the truth. Witnesses are permitted to draw diagrams of the locus, while testifying in court, and to testify and explain the locus from the diagram and to point out the different objects on the diagram to the jury. It does not conform to reason to say that you can draw a diagram of the locus and explain it with testimony but cannot point out the objects at the locus and explain it with testimony. It would seem that it would be better to explain the locus by testimony on the scene so that the jury would have a clear understanding of all the testimony in the case. It is best that the jury clearly understand the case. It is to be borne in mind that the average juror has had very limited experience in the trial of cases and often it is very difficult for them to get a clear picture of the locus, the position of the different witnesses and objects from a detailed narration of the same by the witnesses. It is better in many instances to aid a jury by taking it to the scene and having the scene explained to them in order that they may clearly understand it and arrive at the real truth with reference to it. It could not be said that an explanation of the scene clarifying the testimony given in the trial did not give the defendant a fair and impartial trial. As a matter of fact it would make the trial fairer and more impartial. It is a distinction without a difference to say that a view of the scene is permissible, which is in fact taking evi-

dence, and to say that the taking of testimony at the scene to explain it, which is also taking evidence, is not permissible. In either instance it would be taking evidence. Every safeguard was thrown around the jury and there is no contention herein that any wrong was done other than taking testimony of the witnesses at the scene. Article 557 of the Criminal Code of Procedure of Louisiana provides that "no judgment shall be set aside, or a new trial granted by any appellate court of this State * * * unless in the opinion of the court to which application is made, after examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice." This court would not be warranted in setting aside the verdict and sentence on a bare technicality where no harm has been done that would probably cause a miscarriage of justice. We cannot see how it could injure the defendant to explain and clarify the scene and obtain the truth.

■ If it is in the discretion of the court to permit the jury to view the scene, it is also within the discretion of the court to permit the taking of evidence at the scene to explain it. There is nothing in the record to show any abuse of this discretion.

The right to take the jury to the scene and to take testimony there to explain it is a right based on necessity, and it is within the discretion of the court to determine whether a necessity existed to take testimony at the scene. This seems to be the most reasonable rule, because under

such a rule neither the defendant or the State would be deprived of their evidence.

■ The defendant contends that the judge should not have permitted the jury to examine the car and to see if a bullet could fall in a certain place in the car. The jury has a right to examine the evidence that is offered in the court, and had a right if the evidence had been offered in court to see if a bullet could fall in that place. In order for the jury to have an opportunity to examine the car, it was necessary to take them to the car. For the same reason set out above, a necessity existed to take the jury to view the car and this was in the discretion of the trial judge.

■ Bill of exception No. 2. This bill was reserved to the portion of the court's charge to the jury applicable to cases of a homicide committed while in the commission of a felony and the part of the charge that defines the charge of rape. It was the contention of the State that this was a sexual killing. There is no contention that the charge given was not the law, but it is contended that it did not conform to the evidence.

Without going into the evidence in detail it was shown in the trial of the case that the defendant forcibly detained the deceased, who was a woman, and drove the car that he and the deceased occupied into a dark, deserted and lonely place. The deceased was killed at that place, in that car and with the defendant's pistol. It was also proven that there was blood on the seat and when the defendant was detained his trousers were bloody. There is

a great deal of other testimony in the record that justified this contention on the part of the State. The testimony recited would be sufficient to require the judge to give the charge. Since there were circumstances to lead to this conclusion, it was necessary for the judge to give this charge and it was for the jury to determine whether or not it was a sexual killing. It was for the jury to determine the motive of the killing from the circumstances.

■ Bill of exception No. 3 was taken to the judge's charge on unintentional homicide as follows, viz.:

"An unintentional homicide in the doing of a criminal act not amounting to a felony, nor naturally tending to cause death or great bodily harm, is generally manslaughter."

This charge was read verbatim from Clark and Marshall on Law of Crime. There is no contention that it is not the law, but the contention is that it comments on the facts. It is unnecessary to discuss this phase of the objection because a mere reading of it shows on its face that it is not a comment on the facts. The charge is merely a statement of law. The charge would be pertinent for the facts set out in our reasons in discussing bill of exception No. 2.

■ Bill of exception Nos. 4, 5, 6, 7, and 8 all were taken to the judge's refusing to give special charges on circumstantial evidence. The judge charged as follows:

"There are two methods by which facts can be established first, by direct, and second by circumstantial evidence.

"Direct evidence is the evidence of certain facts bearing directly, and without inference on the questions at issue, or the facts to be proved.

"Circumstantial evidence is the evidence of certain facts from which are to be inferred the existence of other material facts bearing upon question at issue, or the facts to be proved.

"This evidence is legal and competent, and, when of such character as to exclude every reasonable hypothesis except the hypothesis of defendant's guilt is entitled to as much weight as direct evidence.

"The degree of certainty must be equal to that of direct evidence, and if there is any one single fact proved to your satisfaction, which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit the defendant.

"When a conviction is sought upon circumstantial evidence, alone, it must not only be shown beyond a reasonable doubt that the facts are true, but, they must be sure as are opposed, upon any reasonable ground of reasoning, with the innocence of the defendant, and in-capable of explanation upon any other reasonable ground than that of the guilt of the accused."

The defendant in his brief does not set out any reasons why the refusal of the judge to give the special charge was an error. It is not contended that the charge

on circumstantial evidence was not correct or that it did not cover the law of circumstantial evidence. It is merely contended that the special charges covered the facts of the case and that the judge erred in refusing to give them. We see no merit in these bills. It has never been incumbent upon a judge to give special charges on questions of law already covered in his general charge. There is no error in the refusal to give the special charges as the judge had already charged the law relating to circumstantial evidence.

Bill of exception No. 9 was reserved to the court's overruling defendant's motion for a new trial. Articles 1, 2, 3, and 4 of defendant's motion for a new trial relate to exceptions 1 to 8, which we have already discussed, except that part in article 1 of defendant's motion for a new trial wherein he contends that the defendant was injured by the fact that he was brought to the scene of the alleged homicide handcuffed and that the handcuffs were removed in the presence of the jury. This question is raised for the first time in a motion for a new trial. There was no objection raised at that time or bill of exception taken. In the case of State v. Brooks, 124 La. 93, 49 So. 990, 991, the accused was brought into court handcuffed and at, the noon recess was again handcuffed and carried to the jail. In that case the complaint was raised for the first time on the motion for a new trial. The court held as follows:

"We fail to find in the facts stated anything to justify the assumption that the treatment of which defendant complains operated to his prejudice on the trial. If he and his counsel were of the opinion that the exhibition of the manacles in the courtroom was likely to prejudice the minds of the jurors, they should have their objection at a time when it was possible to apply a remedy. Having remained silent at that time, and having had the benefit of the chance of acquittal, the complaint thereafter made came too late. State v. Dorsey, 40 La.Ann. 739, 5 So. 26; State v. Gianfala, 113 La. [463] 479, 37 So. 30; State v. High, 116 La. 79; 40 So. 538; State v. Moore, 119 La. 564, 44 So. 299."

In article 5 of defendant's motion for a new trial, it is set up that there was absolutely no evidence introduced against the defendant upon which the jury might conclude that defendant had caused the death of the deceased unlawfully and feloniously.

This Court in the case of State v. Holder, 159 La. 82, 105 So. 232, 233, in reviewing the previous decisions stated:

"We have repeatedly held that it is only where there is no evidence at all upon some essential element of the crime charged that we may set aside the verdict for insufficiency of the evidence. In State v. Wells, 147 La. 822, 86 So. 268, this court said:

" 'If an accused appears to have been convicted without any evidence at all having been produced against him, literally none at all, a question purely of law is presented on appeal.'

"In State v. Dunnington [157 La. 369], 102 So. [478] 481, a recent expression of this court is as follows:

" 'This court has zealously, uniformly, and consistently adhered to the rule that it will not pass upon nor determine the sufficiency of the evidence to convict, however manifest such insufficiency may appear to the court. State v. Rogers, 152 La. [905] 906, 94 So. 439; State v. Tyler, 150 La. [131] 132, 90 So. 538.'

"The oral testimony attached to the motion for a new trial discloses that much circumstantial evidence was offered and the trial judge's per curiam to this bill is as follows:

" 'The evidence satisfied the court beyond a reasonable doubt that the accused was legally guilty as charged.' "

In the case of State v. Moffett, 161 La. 755, 109 So. 413, the court again reviewed the previous decisions and affirmed the doctrine laid down in the case of State v. Holder, supra.

There was a great deal of circumstantial evidence offered in this case tending to show that the defendant killed the deceased coupled with the facts that it was proved that the last time the deceased was seen before she was killed she was with the defendant, in defendant's car, and was being forcibly detained by the defendant, that defendant had a gun and that the deceased was found killed at or near the place the defendant was last seen to drive. There was evidence to show that the deceased was shot in defendant's car, with defendant's gun, that there was blood on the seat of the car and when defendant was detained there was blood on his trousers. These facts alone, without considering the other evidence in this case, show that some evidence was offered to support and prove these facts. Therefore it would be a question of the sufficiency of the evidence which this court cannot pass upon.

■■■ Article 6 of defendant's motion for a new trial reads as follows:

"That after the regular jury panel of Section 'A' of the Criminal District Court for the Parish of Orleans for the month of November, 1936, had become exhausted, and the jury then being empanelled to try your mover, having not as then been completed, the trial judge of Section 'A', the Hon. William J. O'Hara, having obtained the consent of Hon. J. Arthur Charbonnet, Judge of Section 'E' of said court, ordered the names of the jurors serving in Section 'E' of said court for the month of November, 1936, placed in the jury box as provided for in article 201 of the Code of Crim.Proc. for the drawing of tales jurors in the Parish of Orleans; that from the said jury list of Section 'E' so placed in said jury box the name of one Edward J. Castaing was drawn and tendered to both the State and the defendant for acceptance or rejection; that the said juror, Edward J. Castaing from the panel of Section 'E' was duly accepted by both sides, and was duly sworn to serve and did serve as a juror on your mover's trial, and did return a verdict of guilty against your mover;

"That after the verdict of guilty of manslaughter had been returned against your

mover by said jury, and not before, it was discovered by your mover and your mover's counsel for the first time, that the said Edward J. Castaing on November 16, 1936, the said date on which your mover's trial had been set, and before being called and sworn as a juror on your mover's case, had been already duly empanelled and sworn as a juror in said Section 'E' of said court, in the case of State v. James Howard and Leonard Ward, No. 83553 of the docket of said court, and when his name had been called from the jury box in Section 'A' as a tales juror on the trial of your mover's case, and before he had been presented for your mover's acceptance or rejection, he, the said Edward J. Castaing, sitting as a juror in said Section 'E' in the above numbered and entitled case, had already heard four witnesses in said case;

"That your mover and his counsel having been in attendance every moment from the opening of court, in Section 'A,' at 10:30 A. M. on November 16, 1936, on the trial of your mover's case, had no knowledge nor had they any means of knowing, before their acceptance of said juror, that he had been already duly empanelled and was then serving in Section 'E' as a juror, in the aforesaid case, and had heard four witnesses in said case, nor did the said juror disclose in open court that he was so serving; that the service of the said juror on your mover's case at that the same time he was serving on a case in Section 'E' of said court, was illegal, unlawful, and prejudicial to your mover, and is in direct contra-vention of article 201

of the Code of Crim.Procedure, which specifically provides:

" 'Provided further, that the judge of any Section of the Court wherein a case is being tried, if the jury panel in said Section of said Court is, or about to be, exhausted, before ordering the tales jurors to be summoned and drawn from the Jury Wheel, as provided in this Code, may, at his discretion, when jurors are serving on the regular or special panels, in other Sections of the said Criminal District Court, with the consent of the presiding Judges of said Section, have all of the panel of jurors, in any one, or all of the said Sections, who are not actually serving as petit jurors in the trial of a case report to his said Section of the said Court, as tales jurors,' etc.

"That the said juror, Edward J. Castaing, being at the time he served on your mover's case, in actual service as a petit juror in the trial of the case of State v. James Ward et al., in Section 'E' of said court, was not a legally qualified juror to sit upon your mover's case;

"That as proof of said allegations, your mover makes part of this motion for a new trial, the minute entries of Section 'E' of said Criminal District Court in case No. 83553, State v. James Howard and Leonard Ward, for November 16th, 17th, 18th, 19th and 23rd, 1936, and the minutes of this Honorable Court as they apply to the case at bar;

"That the service of the said juror, Edward J. Castaing, on your mover's case, under the circumstances above described

constitutes in law a great fraud upon your petitioner's rights, and worked an irreparable injury upon him."

The facts were these: The court summoned the venire of section E as tales jurors to complete the jury in the instant case, one of whom, Edward J. Castaing, presented himself with the other members of section E for service, after examination was accepted as a juror in the instant case. It was learned after the trial of the instant case that the juror had been accepted as a juror in a case in section E, that because of some necessity the judge of section E had recessed the trial of that case and, when the jurors of section E were called to section A (the section that was trying this case), he was accepted and sworn. It appeared that section E suspended its trial to permit this section (A) to go on with the trial and complete it. The court, the officers of the court, the prosecuting attorneys, and the defense attorneys were not aware of this fact that the juror had been accepted in a case in another division. There is no contention that the juror was not a fair and impartial juror. The only ground that is urged as to the qualification of the juror is that he was actually serving as a petit juror in the trial of another case. This contention on its face has no merit because he had merely been accepted as a juror. There is nothing in the record to show that the defendant suffered any injury. A careful reading of the article of the Criminal Code will show that this provision was intended for the orderly administration of the business of the respective sections of the criminal

court. To say the least, the contention herein is purely a technical one and no injury has or could be shown by the fact that the juror had been accepted in another case.

Article 7 of defendant's motion for a new trial reads as follows:

"That article 201 of the Code of Crim. Proc. under the provisions of which, the juror Edward J. Castaing was called, sworn, and sat upon your mover's case, is unconstitutional, null and void, for the reason that same is a local or special law 'regulating the practice or jurisdiction of a court,' and therefore in contravention of Section 4 of art. 4 of the Constitution of 1921;

"That your mover having been tried by a jury part of which was selected under an unconstitutional statute, mover is entitled in law to a new trial of his case."

The defendant attacks the constitutionality of the article of the Code of Criminal Procedure on the ground that it is a local or special law. Section 41 of article 7 of the Constitution of 1921 reads:

"The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases."

The authority was vested in the Legislature to enact this article.

The defendant contends that the article of the Code of Criminal Procedure is unconstitutional in so far as it relates to the additional method of drawing tales jurors in the parish of Orleans from the regular and special panels of other sec-

tions of the court. It is argued that this additional provision is a radical departure from the manner and method used throughout the State of Louisiana as well as the parish of Orleans in the past. The sole question for our determination is whether or not this article is a local or special law within the constitutional prohibition.

In the case of State v. Dalon, 35 La. Ann. 1141, wherein the constitutionality of Act No. 98 of 1880 was contested, which act had as its object the organization of the criminal district court of the parish of Orleans, it was contended that the act was a local or special law as it applied only to the parish of Orleans. The court in its opinion says:

"It [the Act] has no private or local good in view, but aims solely at the enforcement of the laws enacted for the prevention and punishment of crime.

"It is a public, a general act, which regulates the common good of each and every member of the human family within the limits of the State.

"The words 'local' or 'special' are clearly used in contradistinction of the word 'general'. There being no power to enact local or special laws, on subjects not enumerated in Article 46, unless after notice and publication, it is clear that the only laws which the legislature can pass must be general in character.

" 'General laws are said to be those which relate or bind all within the jurisdiction of the law making power, limited as that power may be in its territorial operation or by constitutional restraint.' Sedgwick on Const.Stat.Law, p. 30.

" 'The number of persons upon whom the law shall have any direct effect, may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.' People v. Cooper, 83 Ill. [585] p. 589.

" 'Those are to be regarded as public acts which regulate the general interest of the State or of any of its divisions.' New Portland v. New Vineyard, 4 Shep. [16 Me.] 69.

" 'A public act is a universal rule that regards the whole community.' Stephens Comment, vol. 1, p. 67; Kent, vol. 1, p. 506; Dwarris on Stat. p. 629.

" 'An Act is general within the meaning of the Constitution, which, in its subjects, relates to all the people of the State, or their property, though its operation be not equally applicable to all the parts of the State. Local acts are such as are confined to the persons and property, both of a specific locality.' Kerrigan v. Force, 9 Hun, 185. * * *

"A review of the authorities leads to the irresistible conclusion that the Act in question, which is in character one eminently public and conservative of individual security and general welfare, and which was essential for the discipline of a judicial organization created by the Constitution and for the administration of criminal justice in the most important subdivision of the State, does not fall under the

ban of constitutional prescription, and is therefore, constitutional and valid, and must be enforced.

"The argument, that a law which relates solely to the machinery of a court of justice having jurisdiction over the territory of one parish only, is a local or special law, because it does · not operate throughout the State and all the parishes thereof, is perfectly preposterous, and so hollow that it cannot stand criticism."

"The real distinction between public or general laws and local or special laws is, that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests."

This doctrine is affirmed and approved in the cases of Benedict v. City of New Orleans, 115 La. 645, 659, 39 So. · 792; State v. McCue, 141 La. 417, 421, 75 So. 100; State v. Donato, 127 La. 393, 53 So. 662; Williams v. Guerre, 182 La. 745, 769, 162 So. 609; and State v. Smith, 184 La. 263, 288, 166 So. 72.

Under these decisions and the doctrine laid down therein, article 201 of the Criminal Code of Procedure is not a local or special law and is therefore not in conflict with article 4 of section 4 of the Constitution of 1921.

For the reasons assigned, the verdict and sentence are affirmed.

ODOM, J., dissents.

FOURNET, J., dissents on bill of exception No. 1 being of the opinion that the majority opinion has departed from an established and uniformly followed procedure in permitting the examination at length of witnesses while viewing the scene.

O'NIELL, Chief Justice (concurring).

I concur in the ruling on bill of exception No. 1, because it appears that the taking of testimony at the scene of the homicide, and afterwards in the basement of the courthouse where the automobile was stored, was done only so far as it was necessary to give the jury an accurate understanding of the facts of the case. Ordinarily, of course, the testimony in a criminal case should be heard in the courtroom, and it is only where it is absolutely necessary for a thorough understanding of the case that any testimony should be taken outside of the courtroom. The objection to the taking of testimony outside of the courtroom, where that is necessary for the jury to see something which cannot be brought into the courtroom, is that the jury may come in contact with an outsider, or may be tampered with. The record leaves no doubt that nothing of that kind happened in this case. The testimony that was taken at the scene of the homicide, or in the basement of the courthouse where the automobile was stored, was only such as was necessary and such as could not be given as intelligently in the courtroom.

Referring to bill of exception No. 9, which was reserved to the overruling of the defendant's motion for a new trial, and referring particularly to article 7 of the motion for a new trial, contending

that article 201 of the Code of Criminal Procedure was unconstitutional, I consider it sufficient to say that the construction which this court put upon the provisions in this article in the Code of Criminal Procedure in State v. Dalon, 35 La.Ann. 1141, and in other cases, was virtually ratified by the constitutional convention of 1898, and again by the constitutional convention of 1913, and again by the constitutional convention of 1921. The ground on which article 201 of the Code of Criminal Procedure is said to be unconstitutional is that it violates the provision in section 4 of article 4 of the Constitution of 1921, forbidding the Legislature to pass any local or special law regulating the practice or jurisdiction of any court, or changing the rules of evidence in any judicial proceeding or an inquiry before any court. Exactly the same provisions were contained in article 46 of the Constitution of 1879 and in article 48 of the Constitution of 1898, and in the corresponding article of the Constitution of 1913. In the case of State v. Dalon, which was decided in 1883, and with reference to article 46 of the Constitution of 1879, it was held that Act No. 98 of 1880, which, among other provisions, provided the method of drawing juries in the criminal district court for the parish of Orleans, was not violative of article 46 of the Constitution of 1879. There were several other decisions (as shown in the reprint of 35 La.Ann.) upholding the constitutionality of Act No. 98 of 1880. Therefore, when the constitutional convention of 1898, and the convention of 1913 adopted the provisions of article 46 of the former Constitution

as article 48 of the new Constitution, and when the convention of 1921 adopted these provisions in section 4 of article 4 of the new Constitution, they were adopted with reference to the construction which had been put upon these provisions in State v. Dalon and other cases construing Act No. 98 of 1880.

My opinion is that article 201 of the Code of Criminal Procedure is a local law, but it does not make such a difference between the practice or jurisdiction of the criminal district court and the district courts throughout the State as is forbidden by section 4 of article 4 of the Constitution of 1921. The ruling in State v. Dalon might have rested upon the proposition that Act No. 98 of 1880 did not make such a difference between the practice or jurisdiction of the criminal district court for the parish of Orleans and the practice or jurisdiction of the district courts throughout the State, as was forbidden by article 46 of the Constitution of 1879.