970 So.2d 505 (2007)
STATE of Louisiana
v.
Jason MATTHIS.
No. 2007-KP-0691.
Supreme Court of Louisiana.
November 2, 2007.
Rehearing Denied January 7, 2008.
*506 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Donna R. Andrieu, LaShanda Webb, Assistant District Attorneys, for applicant.
Regan & Associates, Martin E. Regan, Jr., Karla M. Baker, New Orleans, for respondent.
PER CURIAM.[1]
The state charged respondent by grand jury indictment returned in 1999 with second degree murder in violation of La.R.S. 14:30.1. After respondent waived a jury and elected a bench trial, the court found him guilty as charged and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence. On direct review, the court of appeal affirmed the conviction and sentence, rejecting, inter alia, his argument that the trial judge erred in reopening the evidence after closing arguments by visiting the scene of the crime in the company of the lead investigating officer and the prosecutor. State v. Matthis, 00-0219 (La.App. 4th Cir.11/29/00), 775 So.2d 558. With regard to this claim, the court of appeal found that respondent failed to show any prejudice "even though the order of events was admittedly unusual." Matthis, 00-0219 at 12-13, 775 So.2d at 563-565 ("The evidence of where the body and items were found was already in evidence through the photographs [of the crime scene]. No new testimony was taken. . . . [and] the trial judge gave defense counsel an opportunity to re-visit the scene with all parties present [and] might have been willing to entertain further argument should it have been necessary, during which the defense could have argued relevant points about the scene."). This Court denied review. State v. Matthis, 00-3552 (La.11/9/01), 801 So.2d 358.
Thereafter, respondent filed an application for post-conviction relief in 2002 alleging a claim of ineffective assistance of counsel related to the unusual step taken by the trial judge of visiting the crime scene after closing arguments. Cf. La. C.Cr.P. art. 765(5)(in the normal order of trial, the court "in its discretion may permit the introduction of additional evidence prior to argument"). Following an evidentiary hearing, the district court granted relief, reversed respondent's conviction and sentence, and ordered him released from the penitentiary on his original bond to await retrial. The state sought review in the court of appeal, which denied its application upon finding no abuse of discretion by the district court. State v. Matthis, 06-1555 (La.App. 4th Cir.3/5/07)(Love, McKay III, Kirby, JJ.). We granted the state's application to review the rulings below and now reverse and reinstate respondent's conviction and sentence because respondent, who failed to show any prejudice on direct appeal, has not demonstrated in these post-conviction proceedings that the trial court's unusual action, and defense counsel's failure to respond in what respondent would deem an appropriate manner, deprived him of a fundamentally fair trial, one resulting in a verdict worthy of confidence.
The present case arose from the beating death of a man found lying in the middle of the 6000 block of Old Gentilly Road at 3:30 a.m. on January 22, 1999. The location is a relatively remote area in New Orleans *507 East where Old Gentilly Road ends at the Jourdan Road overpass off Almonaster Boulevard between Chef Mentur Highway and I-10 East. The victim was still breathing at the time he was found but he had sustained a fractured skull and several broken ribs and he died in a hospital shortly thereafter. At the bench trial, defense counsel characterized respondent as an unwilling witness to the actions of his acquaintance, Jason Marullo, who was with him on the night of the instant offense. Respondent did not testify at trial but in a recorded statement given the police at his parents home in Slidell, Louisiana, two days after the incident and after he received his Miranda rights, he related that he had been out drinking with Marullo that morning when they encountered the victim who asked Marullo whether he had any cocaine. The three men then got into respondent's car and the victim directed respondent to the scene on Old Gentilly Road where he and Marullo planned to conduct a drug deal without fear of discovery. Instead, Marullo got the victim out of the car, pummeled him to the ground, and then stomped on him. Respondent finally interceded by pulling Marullo off of the victim and back into the passenger side of his car. According to respondent, Marullo climbed into the driver's seat and drove over the victim. In connection with his statement, which the state played at trial, respondent provided the officers with a set of clothes he claimed to have worn on the night of the offense. As for Marullo, he subsequently fled town and died shortly thereafter, but not before informing respondent's brother that he alone was responsible for the victim's death and that respondent had no complicity in the offense. Marullo also made similar statements to a long-time friend of respondent before leaving town.
However, despite respondent's claim that he was a mere bystander, the state presented evidence at trial that on the same morning, respondent and Marullo walked into a lounge on Hayne Boulevard and that Marullo announced spontaneously to Charles Melancon, an acquaintance seated at the bar, that "we" had killed a man. Melancon did not take Marullo seriously at first but followed him and respondent into the bar's restroom where he saw Marullo at the sink washing blood off his person and his clothing as respondent, marked with blood specks on his forehead and arms and with blood soaking his lower pants legs, stood next to him "waiting his turn." Marullo described the victim as "an old white crack head," and when Melancon asked him how he had died, Marullo responded, "We beat him to death." Melancon then asked Marullo why he was sure that the victim had died and respondent spoke up for the first time, interjecting that, "I ran him over with my car." Later that morning, as the police were conducting their investigation by interviewing one of the victim's co-workers after determining his place of employment, Melancon came forward with information about what he had seen and heard in the lounge on Hayne Boulevard. The police then interviewed Melancon and Holly Smith, the barmaid on duty when respondent and Marullo made their appearance, and recovered a bloody shoe string and a bloody cloth towel from the restroom in the bar.
At trial, Melancon and Smith testified that the clothing respondent provided the police after they sought him out at home and obtained a statement about the incident did not match the clothing he had been wearing on the morning of the offense. In addition, Officer Joseph Tafaro, an expert in blood and hair comparison, examined the car respondent had driven on the night of the offense, subsequently impounded by the police following his arrest, and found several blood stains on *508 samples taken from the seats and the carpeted floorboard. The officer could not match the blood to respondent but he also found two hairs on the victim's clothing that appeared similar to respondent's hair, suggesting "that there was some type of physical contact between the victim and Mr. Matthis." In an effort to explain some of the forensic evidence, respondent called his father, who owns a body shop in Slidell, to establish that the family had purchased the car after it was "totaled" in a bad accident which left blood and human tissue embedded on the inside of a badly fractured windshield when the occupants' heads hit the glass. Jerry Heirsch, who did work for the Mathis family body shop, testified that when he replaced the windshield he also noticed other blood stains on the inside of the vehicle.
Against this backdrop, in a counseled application for post-conviction relief, respondent reargued his assignment of error urged on direct appeal that the trial judge erred in visiting the scene with the state's lead investigating officer at the conclusion of closing arguments. That aspect of the application was repetitive and could not alone have supported the granting of post-conviction relief. La.C.Cr.P. art. 930.4(A)("Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered."). However, the application added claims that defense counsel, who had objected initially to the court's decision and then got lost on the way to the scene because he traveled separately in an attempt to join the trial judge, the police officer, and the prosecutor, rendered ineffective assistance in two respects: first, by waiving relator's presence when the trial judge viewed the crime scene, a "critical stage" in the proceedings that respondent could easily have attended as he was out on bond at the time; and second, by declining the court's offer on the following day to revisit the scene and reconstruct what had taken place on the preceding evening. The application claimed that by failing to reconstruct the events, counsel deprived respondent of an opportunity to address personally any questions raised by the trial judge about the crime scene and thereby also deprived him of adequate appellate review based on a full record of the proceedings leading to his conviction.
Following an evidentiary hearing on the claims, which included testimony from the former partner of the lead investigating officer, Detective Byron Adams, who had died by the time of the hearing, respondent's trial counsel, and respondent, the district court granted relief and ordered a new trial. The court did not provide written reasons for its judgment. In upholding the district court's ruling, the court of appeal specifically noted that "[t]his Court did not have all the issues raised in the application for post-conviction relief when the motion came before us on appeal." Matthis, 06-1555 at 1, n. 1.
The premise of the rulings below that counsel erred in his response to the trial court's action drew on jurisprudence in this Court that a tribunal's viewing of the scene of a crime constitutes the taking of evidence and that defendant and his counsel therefore have a right to be present. State v. O'Day, 188 La. 169, 175 So. 838, 841 (1937)("It is only reasonable that, viewing the scene, the physical facts and the circumstances surrounding the scene is as much the taking of evidence as taking the testimony of witnesses."). The holding in O'Day is incorporated in La.C.Cr.P. art. 762(2), which permits a jury or a judge "to view the place where the crime or any material part thereof is alleged to have occurred, or to view an object which is *509 admissible in evidence but which is difficult to produce in court." The article further provides that "[a]t this view, the court shall not permit the taking of evidence except in connection with the place or object. . . ." The article presupposes "that the judge, the district attorney, the defendant, and his counsel have to be present." La.C.Cr.P. art. 762 Off'l Rev. Cmt.(d).
Nevertheless, even assuming that La.C.Cr.P. art. 762(2) would have allowed respondent to testify for limited purposes related to the viewing of the crime without exposing him to cross-examination on the entire case, thereby giving him an opportunity to explain various aspects of the scene from his perspective, the courts below erred because the standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in State v. Washington, 491 So.2d 1337, 1339 (La.1986), requires respondent to show not only that his trial attorney's performance fell below an objective standard of reasonableness under prevailing professional norms but also that counsel's inadequate performance prejudiced him to the extent that the trial was rendered unfair and the verdict suspect, i.e. that counsel's errors undermined the proper functioning of the adversary process.
Respondent fails to make the latter showing because, unlike the case in O'Day, it clearly appears that details of the crime scene did not implicate any of the evidence upon which his conviction rests. According to the account provided by the trial judge for the record, he simply asked Detective Adams to point out the three locations represented in the state's photographic exhibits and described by the officer in his testimony: the spot where "[y]ou could see actual scuff marks in the dirt, as well as the victim's money and identification;" the "impact section" "where the victim's scalp and hair was;" and the location where the victim dragged "himself from that location to the point where his body was found." As described by the officer, and even assuming that he and the trial judge entered into an extended discussion about the scene as they viewed it, these various locations could not resolve the question of whether the victim had in fact been struck or run over by respondent's vehicle, a matter about which the pathologist who performed the autopsy could find no objective evidence despite the various injuries sustained by the victim, much less settle who was driving at the time.
On the other hand, in O'Day, this Court had the benefit of a per curiam by the trial judge explaining why he allowed the jurors to view the scene where the homicide took place, and then to view the car in which the shooting occurred where it had been impounded in the basement of the Criminal District Court building in Orleans Parish. The trial judge observed that the location of the hair, bone and tissue left in the vehicle as a result of a bullet fired through the victim's head bore directly on the question of whether, as the state claimed, defendant had shot the victim as she turned her back to him and stepped out of the car, or whether, as defendant claimed, he shot in self-defense. O'Day, 175 So. at 840-41; see also State v. Gallow, 338 So.2d 920, 923 (La.1976)(trial court did not abuse its discretion in permitting jurors to view scene of the murder because "there were several people involved in the shooting incident which resulted in the victim's death. . . . the location of each participant [was] critical. . . . [and] the photographs [introduced of the scene] were insufficient to show clearly the location of the participants.").
*510 Thus, even assuming that in the present case counsel erred initially in waiving his client's presence and then in declining the trial judge's offer to revisit the scene with respondent present, respondent makes no showing that would undermine confidence in the reliability of the verdict returned by the court, which rejected the testimony of respondent's family and friends who portrayed him as an unwitting and unwilling bystander and found credible the testimony of a totally unrelated witness who heard Marullo announce that "we" killed someone and respondent claim that he had run over the victim with his car. On direct review, and in the context of relator's own statement to the police in which he admitted that he had been present on the scene with Marullo when the victim sustained the injuries that killed him, the court of appeal found this evidence sufficient for any rational trier of fact to find respondent guilty of second degree murder. Matthis, 00-0219 at 10, 775 So.2d at 563 ("Most importantly, the State presented a witness who said that the defendant was bragging at the bar that he ran over the victim with his car. The trier of fact, a seasoned Criminal District Court judge, found the witness credible. These facts are more than sufficient to support a finding that the defendant intended to kill the victim and that he succeeded in that objective."). Relator thus has not demonstrated that his conviction "resulted from a breakdown in the adversary process that render[ed] the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
Nevertheless, respondent argues that testimony adduced at the hearing on his application for post-conviction relief provides an independent ground for affirming the court's grant of a new trial. Detective Darryl Ribert, had also been present when respondent gave his statement to Detective Adams, and he testified at the hearing to his firm belief that respondent appeared to have been honest in his accounting of the incident and that if it had been his case, and he had been the lead detective, he "would have charged him with accessory after the fact" to the murder committed by Marullo. Detective Ribert recalled that he and Detective Adams were certain at trial that the court would return at most a verdict for manslaughter and were therefore surprised when the court found respondent guilty as charged. Although the state objected to the relevancy of this testimony on grounds that it did not appear to address any of the claims raised in the application for post-conviction relief, the trial court allowed it and counsel explained in arguing his motion that the officer's testimony would provide the court with "a sense of the case. . . . because Ribert was there, Ribert knew the facts." In counsel's view, the officer's testimony would thereby underscore for the court that respondent's application did not raise simply "a nice technical error," but was "based on facts that would support that he's probably innocent of second degree murder."
However, Detective Ribert's subjective beliefs do not constitute compelling evidence of actual innocence which might support the granting of post-conviction relief. State v. Conway, 01-2808, p. 1 (La.4/12/02), 816 So.2d 290, 201 (assuming that claims of actual innocence not based on DNA evidence are cognizable in post-conviction proceedings, such a claim must involve new, material, noncumulative and conclusive evidence which undermines the prosecution's entire case)(internal quotation marks and citation omitted). A police officer's subjective views are not determinative of probable cause to arrest. State v. Kalie, 96-2650, p. 1 (La.9/19/97), 699 So.2d 879, 880 ("[T]he determination of reasonable grounds for an investigatory *511 stop, or probable cause for an arrest, does not rest on the officer's subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action.") (citation omitted). Nor do they have any bearing on the purely objective inquiry under the Due Process Clause of whether the state has marshalled evidence sufficient to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt. Cf. Jackson v. Virginia, 443 U.S. 307, 319, n. 13, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(rational trier of fact standard does not "permit a court to make its own subjective determination of guilt or innocence").
Accordingly, the judgments below are reversed, respondent's conviction and sentence for second degree murder are reinstated, and this case is remanded to the district court for purposes of taking respondent into custody and remanding him to the penitentiary to serve the remainder of his life term.
RULINGS BELOW REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED FOR EXECUTION OF SENTENCE.
NOTES
[1] Judge Fred C. Sexton sitting ad hoc for Pascal F. Calogero, C.J., recused.