## No. 14,398.

### STATE OF LOUISIANA vs. TOM MAXEY ET AL.

#### SYLLABUS.

1. The statement was not a mere narrative of the wounded man. Declarations of one wounded made immediately after the wounding as to how it was inflicted or by whom, have been held admissible where voluntarily or spontaneously made at a time so near the act as reasonably to preclude all idea of design.
2. One may by sign, he being unable to speak, given two minutes after the shooting to one to whom he runs and meets a short distance from the scene of the shooting, let it be known by whom he has been shot, and the declaration by sign is admissible as part of the *res gestae*.
3. The trial judge held that the accused should have sooner discovered the evidence upon which they based their motion for a new trial and that it was cumulative. New trial will not be ordered on appeal until it is manifest that error has been committed. There is no evidence showing that the trial judge has exceeded the bounds of the discretion with which he is vested.

A PPEAL from the Twelfth Judicial District, Parish of Sabine— Lee, J.

---

*Walter Guion,* Attorney General, and *Amos L. Ponder,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

---

*William C. Pegues* and *Charles C. Egan,* for Defendants, Appellants.

The opinion of the court was delivered by

Breaux, J. The defendants, Maxey and Smith, were charged by information of the district attorney with shooting Barney Grogan with intent to murder. They were tried by jury and sentenced to three years' imprisonment in the State penitentiary. They appeal from the verdict and sentence. Their grounds are stated in three bills of exceptions.

The first bill of exceptions presents the question whether the evidence admitted was admissible as part of the *res gestae*. The defendants stoutly deny that the evidence was part of the *res gestae*. The court inserted in the bill of exceptions, in substance, that the witness, Bethany, who was lying in bed at the time and saw the shooting, testified that he immediately went out and met the wounded man, Grogan, while running from the saw-mill and calling for Manager G. W. Loring, and that he, the wounded man, told him, witness, that accused had shot him. It is in place to state that Grogan, the wounded man, was a night watchman of a saw-mill plant. This declaration of the wounded man was made as he was running from the scene of the shooting, and in about one or two minutes afterward he came to the residence of the manager, Loring, and by this time his tongue was so swollen he could not talk, and Loring asked him if Maxey shot him and he answered in the affirmative by nodding his head. The trial judge added that if the testimony of Loring were taken alone there would be some doubt as to its admissibility, but, taking the same in connection with the statement made to Bethany, the judge *a quo* believed it admissible as part of the *res gestae*.

There was oneness and identity between the utterance of the wounded man and the affirmative shake of his head, all within one or two minutes. That which he said to the witness whom he met while running is in substance the same as indicated by the affirmative nod of the head when asked by the manager if Maxey had shot him.

Mr. Bradner, in his work on Evidence, p. 490, says that it is not easy always to determine when declarations may be received as part of the *res gestae* and the cases are not always in harmony.

We understand the rule, sustained by many trustworthy decisions, as admitting declarations, "made under the impulse of the occasion, though somewhat separated in time and place, if so woven into it by the circumstances as to receive credit from it." Abbott, Trial. Brief, p. 628.

Declarations connected by circumstances immediately following may be admissible. Bradner on Evidence, p. 494. "That is to say, a declaration to be a part of the *res gestae* need not be coincident in time with the main fact proved, if the two are so closely connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause." Bradner on Evidence, 2nd Ed., p. 494.

It was an impulsive declaration of the wounded man almost immediately afterward. Very little time elapsed between inflicting the wound and the declaration. One followed the other in rapid succession and left no time for connected narrative or self-serving account. Beyond question there are declarations after the act that are admissible. The ruling of the judge *a quo* finds support in State vs. Thomas, 30 Ann. 600, and in State vs. Robinson, 52 Ann. 541.

The defendants urge in matter of the foregoing bill of exceptions that Loring's evidence should have been excluded because it was not the spontaneous utterance of Grogan, the wounded man; that Loring suggested the names of the accused and asked: "Did Smith and Maxey shoot you?" and refer to one of the decisions of the court in which it was decided that the statement must spring from the act and under circumstances which exclude all idea of designs. State vs. Thomas, 30 Ann. 1134.

In our view, the question falls within the rule laid down in this case and the utterances to one witness and the sign given afterward to another were made and given under circumstances which preclude the idea of design and have every appearance of having sprung from the act. But it is said by defendants' counsel that Loring suggested the names of the accused. We have noted that the wounded man could not speak. The manager's inquiry must have been prompted by that fact. His inquiry was taken advantage of by the wounded man to account for his physical condition. He caught the meaning and replied. He availed himself of the words of the manager and made them his own. The truth of this affirmative sign is corroborated by the statement made immediately before to the witness Bethany. If Grogan could have talked, he would doubtless have said to Loring that which he had just said to Bethany.

The second exception reserved during the trial shows that, under the objection of the defendants, Bethany was permitted to testify that "he saw the man who shot Barney Grogan after the shooting coming

toward the house where he, Bethany, lived and asked Grogan who sho!. him," to which Grogan replied that Smith and Maxey "shot him"; that he "hailed him" ("them," we presume, is meant), and they would not answer, whereupon he fired at them and they returned the fire.

The objection was that it was hearsay and that it was self-serving.

Having decided that the testimony of Loring had been properly admitted, this virtually decides that the testimony of declarations made to Bethany a few moments before were also admissible and disposes of this bill of exceptions.

We are brought to bill of exceptions number three, reserved to the overruling of the motion for a new trial. The motion was sustained by the affidavit of the parties by whom defendant stated he would prove, in case of a new trial, that Grogan said that he did not know who shot him.

The following is the statement of the judge *a quo*, made part of the bill of exceptions, "that the alleged newly discovered evidence is cumulative and strictly rebuttal; that both of the witnesses relied upon lived in the town of Many in call of the courthouse and the case had been pending for some time and that it did appear that this evidence could have been obtained by the use of ordinary diligence. There must be an end of all things. The court is of the opinion that the accused were correctly convicted by an impartial jury and therefore refused a new trial."

About six months elapsed from the time the information was filed to the date of the trial. As to whether or not the defendants expected a different result on the second trial is not stated in their affidavit for a new trial. The asserted newly discovered evidence directly contradicts the evidence against the accused. It can have no other effect than to contradict the testimony admitted.

It is well settled by repeated decisions that a verdict will not be set aside and a new trial granted to enable the defendant to impeach the testimony admitted on the trial and, besides, motions for a new trial are largely left to the discretion of the trial judge. State vs. Venables, 40 Ann. 215; State vs. Spooner, 41 Ann. 780; State vs. Young, 34 Ann. 346; State vs. Fahey, 35 Ann. 9; State vs. Dukir, 35 Ann. 46; State vs. Burt, 41 Ann. 787; State vs. Garig, 43 Ann. 365; State vs. Ware, 43 Ann. 400; State vs. Chambers, 43 Ann. 1108.

The refusal to grant a new trial because the trial judge does not

believe the affidavit of defendant, is not open to review in the Supreme Court. State vs. Hunt, 4 Ann. 438; State vs. Rolland, 14 Ann. 40; State vs. Beaird, 35 Ann. 104. This was subsequently modified in State vs. Hyland, 36 Ann. 87, not to the extent, however, of holding that the trial judge is not vested with discretion to finally determine the question. It is subject to review on appeal only in case of manifest error. We have not found manifest error. Here it was not shown or alleged that the newly discovered evidence would change the result on new trial. Underwood Criminal Evidence, Section 519.

It is ordered, adjudged, and decreed that the verdict and sentence be affirmed.

Rehearing refused.