No. 14,482.

STATE OF LOUISIANA VS. GEORGE WASHINGTON ET AL.

SYLLABUS.

1.  Service of the list of talesmen on an accused before the completion of the panel and before the drawing to complete the panel had commenced, is compliance with the law requiring service.

2.  In general a new trial will not be granted to admit testimony to impeach a witness on the former trial, but as this case presents exceptional features and is entirely out of the ordinary, it is remanded for a new trial.

APPEAL from the Seventeenth Judicial District, Parish of Vermilion—*Gordy, Jr., J.*

*Walter Guion,* Attorney General, and *J. Nelson Greene,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*S. P. Watts,* for Defendant, Josepr Sonier, Appellant.

The opinion of the court was delivered by

BREAUX, J. George Washington and Joseph Sonier were jointly charged and indicted for murder by the Grand Jury of the Parish of Vermilion. Joseph Sonier presented a motion to the court for severance. It was allowed.

The case of Washington was called and tried and he was found guilty. The case of Sonier was then called and he, also, was tried and found guilty as charged "without capital punishment." He made application for a new trial, which was overruled. He was then sentenced to serve at hard labor in the penitentiary for the term of his natural life. He appeals.

In the first bill of exceptions taken by the defendant, Sonier, it is stated that no certified list of talesmen jurors had been served. The *per curiam* of the bill shows that the objection was overruled because the law does not require a certified list of talesmen to be served, and, besides, that service had been made as soon as possible in the regular course of the trial and the court, so far as practicable, had complied with the statute which requires service of the names of jurors on the regular panel. We copy the words of the court embodied in the bill: "Which objections were overruled by the court for the reason that the law does not require a certified list of talesmen to be served upon the defendant, and that counsel for defendant, by instruction of, and in the presence, of the court and defendant was handed a list of the said talesmen by the sheriff before the completion of the panel and before the drawing from the talesmen to complete the panel has commenced." We have not found that the statute requires that any further service be made than was made in this instance.

We take up, in the second place, the following additional ground urged for a new trial before the District Court and again pressed on appeal before this court, viz: That George Washington, in testifying against the defendant here, "thought it necessary to adhere to a statement made by him on the trial of his own case in order to escape the death penalty," and defendant annexes the affidavit of George Wash-

ington to his motion. This affidavit presents, for reasons apparent in a moment, a serious question.

.It sets up that it was the impression of Washington, received from his attorney, that he was called upon to answer for manslaughter and not for murder, and that he was told by his attorney that he had "such an arrangement with the District Attorney as would, in the end, reduce the crime to manslaughter; that the consideration he was to receive for turning State's evidence was the penalty for manslaughter on condition of his implicating Joseph Sonier, the defendant here," as one of the murderers of Joseph Ozone; that when he went on the stand as a witness in his own behalf he testified, as before declared, and repeated this testimony afterward when he appeared before the court as a witness in the case against Joseph Sonier "believing, as I did, that it was part of the programme before my penalty could be rendered," and "in thus testifying that he swore to a falsehood, but only did so to save his own life and that he makes the affidavit" for the sole purpose of repairing the injury against Sonier and the wrongful infliction of punishment. The name of the young attorney who defended Washington, whose case is not before us, is signed by him as witness.

The trial judge, in his narrative of the case, embodied in the bill overruling the motion for a new trial, says that the motion for a new trial was overruled because the court considered that there was ample evidence to warrant the conviction, that the facts and circumstances "of the case showed the guilt of the accused" beyond any reasonable doubt, and that while it is shown by the affidavit annexed to the bill that George Washington recanted his testimony given against Sonier, still the court, considering all the facts and circumstances, refused the new trial; that the testimony of Washington "against the defendant was corroborated by every material fact and circumstance connected with the case; that the sworn declaration annexed to the bill was obtained at a time and place of which the court has no knowledge and probably under such circumstances as might show that it was extorted or influenced. The declaration is not supported by any fact or circumstance connected with the case."

In reference to the attempt of the witness to impeach his own testimony, we are not inclined to think that it presents ground of itself sufficient to grant a new trial. As a question of law, new trials are

not usually granted to hear testimony to impeach the testimony heard on the trial. By this affidavit affiant seeks to discredit his own testimony. The principle that such affidavit of itself is not sufficient to justify a new trial has the support of authorities. State vs. Young, 34 Ann. 346; State vs. Fahey, 35 Ann. 9; State vs. Diskin, 35 Ann. 46; State vs. Burt, 41 Ann. 787; State vs. Garig, 43 Ann. 365.

But this case presents an exceptional feature. The name of the attorney for George Washington, the affiant, in the case in which he was convicted appears as a witness. It may be mere inadvertence or downright thoughtlessness growing out of the idea that he was signing as a witness to the mark. Be it as it may, we think that in the interest of justice it is advisable to set aside the verdict and sentence of the court.

The issues as relates to the affidavit are in such shape that we feel constrained to send the case back to the District Court for further proceedings.

We have given these issues our most careful consideration. In addition to what we have already stated, it has occurred to us at times while considering the issues that perhaps the young member of the bar, not familiar with the desperate plans, shifts, and artifices to which persons called upon to defend themselves in capital cases will sometimes resort to, had permitted his client to talk to him too much about the advisability of turning State's evidence and that the young man failed to stop him when he should have stopped him; that, subsequently, having heard this talk, he preferred not to deny the statement although it had assumed the shape it has and although it did not strictly accord with the facts. We have found no motive for the signature.

At the same time we cannot pass unnoticed the fact that the witness is an officer of the court and that no counter affidavit has been made. Without denial of any kind, made in the manner such denials should be made in criminal proceedings, we feel that there is only one alternative left and that is to remand the case for a new trial.

We have always, after our study of this part of the case, returned to the question which we have not answered to our satisfaction. Why did he sign and why did he add the weight of his name as an officer of the court to this affidavit? The proceedings to this point had been regularly conducted. The issues were clearly before us. At the end

of the case this signature confronts us and compels us, we think, to direct that another trial be had in order that it may not appear in future proceedings that one who stands in the relation to the court that attorneys do, in any manner, gave countenance to an agreement such as stated in the affidavit.

The law and the evidence being with the defendant, it is ordered, adjudged and decreed that the verdict and sentence in this case are annulled, avoided and reversed.

It is further ordered, adjudged, and decreed, that the case be remanded for a new trial.