140 So. 28

## STATE v. HEINTZ.

### No. 31573.

Feb. 1, 1932.

Rehearing Denied Feb. 29, 1932.

Ulic J. Burke, of New Orleans (Loys Charbonnet and Joseph A. Casse, both of New Orleans, of counsel), for appellant.

Percy Saint, Atty. Gen., and Eugene Stanley, Dist. Atty., and Chandler C. Luzenberg, Jr., Asst. Dist. Atty., both of New Orleans, for the State.

ODOM, J.

The defendant was convicted of robbery, and sentenced to serve not less than nine nor

more than fourteen years at hard labor in the state penitentiary, and appealed.

The only bill of exception argued before this court is the one reserved to the ruling of the trial court refusing to grant defendant a new trial.

The basis of the motion is that since the trial and conviction defendant has discovered new evidence which it is alleged was not discovered before the trial, and which, if admitted on a second trial, would change the results.

The only new evidence discovered by defendant is that which, it is alleged, tends to impeach the testimony of Miss Lena Miller, the state's chief witness at the trial. Miss Miller was the person robbed, and the only witness called by the state to prove it. That she was in fact robbed of the sum of $940, which she was carrying in her purse, is not questioned. But defendant denied that he was the person who robbed her, and attempted to prove an alibi, which defense was rejected by the jury.

Miss Miller testified on the trial that she was driving her automobile along a street in New Orleans when another automobile driven by one man with another standing on the running board, overtook hers and crowded it so close to the curb on the right-hand side of the street that she was forced to stop; that, when she stopped, the man on the running board of the other car demanded that she deliver to him her purse with its contents, otherwise he would kill her; that upon her refusal he struck her with a revolver and then attempted to take the purse from her and that a struggle ensued; that her

assailant, not being a strong man physically, was about to fail in his attempt, when the other man who had driven the car got out, came to the assistance of his companion or associate; and that the two overpowered her and took the purse, with its contents, and escaped.

Several days later, defendant was arrested as a suspect and carried to police headquarters and Miss Miller was sent for. She testified on the trial that she was shown a great number of persons at police headquarters (one hundred or thereabouts), and that, while she was not personally acquainted with defendant and had never seen him before the day of the robbery, she pointed him out and identified him as the man who had driven the automobile and who had assisted in the robbery.

While on the stand, she said repeatedly that defendant was the man. She identified him positively in court, and said she could not be mistaken. While her testimony was not corroborated, the jurors seem to have been satisfied with her identification of the accused, and we can well see why they should have been, as the robbery took place in broad daylight and she had ample opportunity to observe her assailants. The other participant in the holdup was not arrested, but Miss Miller gave an accurate description of him also, stating that he was a tall slender man with high cheek bones.

The court was asked to grant a new trial in order that defendant might call certain witnesses whose testimony it is alleged would impeach that of Miss Miller given on the trial concerning her identification of the accused.

The general rule is that the verdict of a jury will not be set aside and a new trial granted for the sole purpose of enabling the accused to impeach testimony admitted on the trial. This rule is repeated in numerous decisions of this court, and is announced by the text-writers generally. State v. Patterson, 150 La. 114, 90 So. 532; State v. Preuett, 142 La. 720, 77 So. 514; State v. Folden, 135 La. 791, 66 So. 223; State v. Serio, 137 La. 517, 68 So. 847; State v. Feducia, 138 La. 974, 70 So. 1010; State v. Bordelon, 141 La. 611, 75 So. 429; State v. Young, 107 La. 618, 31 So. 993; State v. Maxey, 107 La. 799, 32 So. 206; State v. Gauthreaux, 38 La. Ann. 608; State v. Johnson, 30 La. Ann. 305; Archbold's Criminal Practice & Pleading, pp. 649–653; Wharton's U. S. Criminal Digest, pp. 458, 459; Cyc. vol. 12, p. 741; 16 C. J. 1202, § 2729; 20 R. C. L. 294, § 76.

If this general rule has ever been departed from in this state, our attention has not been called to the case, and we have not been able to find one.

However, in the case of State v. Washington, 108 La. 226, 32 So. 396, 397, the court, after repeating the above general rule, said:

"But this case presents an exceptional feature. The name of the attorney for George Washington, the affiant, in the case in which he was convicted, appears as a witness. It may be mere inadvertence or downright thoughtlessness, growing out of the idea that he was signing as a witness to the mark. Be it as it may, we think in the interest of justice it is advisable to set aside the verdict and sentence of the court. The issues, as relates to the affidavit, are in such

shape that we feel constrained to send the case back to the district court for further proceedings."

■■ The case at bar presents no "exceptional feature." Defendant was convicted on April 30, and on May 7 a man named Martin says he went with his sister, Mrs. McGuire, to a drug store for the purpose of seeing "to what extent Miss Miller was certain of her identification of Floyd Heintz (the defendant)," and that while they were there Miss Miller came in and sat at a table for a few minutes, when he and his sister walked out to their car, and that as they were about to start the car Miss Miller came out and said "Wait a minute. Aren't you the man that held me up on February 21?"

Upon his denial that he was the man, he says that Miss Miller asserted that he was and said she had witnesses to prove it, and wanted him to go to Capt. Lannes' house and "he could tell you whether you were the man or not." He says she further told him that, if he would tell her who robbed her and thus assist her in getting her money back, she would do all she could for Floyd Heintz.

Mrs. McGuire, Mrs. Cauther, and Mrs. Heintz say they went to the residence of Miss Miller on the night of May 6, and asked her in the presence of a detective if she was positive that Floyd Heintz was the man who had robbed her, and that said to Mrs. Heintz:

"If you will help me find the man who drove the Oldsmobile the Saturday night before your son was arrested, I will go down and do all I can to have your son released."

They say that Miss Miller further told them that on Saturday night before Heintz was arrested she had received a telephone call from a party whose name she declined to divulge, telling her that the man who drove an Oldsmobile car at a certain time was the one who robbed her. Mrs. Heintz says Miss Miller told her that "she watched for the car, but finally about 1:30 Friday morning, March 20, she had the man arrested, and him and another man was in an Oldsmobile and my son, Floyd Heintz, was driving the car at the time."

The purpose of this testimony was to show that Miss Miller was not certain of her identification of this accused and that she had him arrested on hearsay.

The witness Mrs. McGuire was defendant's concubine. Martin is her brother, and Mrs. Coulter is her sister. The district judge says in his per curiam to this bill that "the witnesses, each in his turn, did not impress me favorably. Although there appeared testimony to the effect that private detectives employed by defendant's family were present at the time some of the alleged statements of the prosecuting witness (Miss Miller) were made, not one private detective took the stand at this hearing" (hearing on the motion for a new trial).

Mrs. Heintz testified that she had two detectives, Pendleton and Roth, to go with her "to see what Miss Miller would say." It is somewhat surprising that these detectives were not called as witnesses on the trial of the motion for rehearing. They were not interested in the outcome of the trial, and their testimony would no doubt have had great weight with the trial judge.

Mrs. Liddell, who keeps a garage and filling station, testified that Miss Miller went to her place in the latter part of March,

which was before the trial of the case, and asked about an Oldsmobile car which had been stored with her, the dates on which it had been parked there, the license number, and who generally drove it. This car it seems belonged to Mrs. McGuire, the concubine of defendant. She says Mrs. Miller told her "she had a fat fellow in jail that answered somewhat to the description, but he was not the gentleman that held her up. * * * She said a tall man with a very ruddy face and high cheek bones, seemed like he had brown powder on his face, that held her up. * * * That she had the fat fellow in jail * * * to make him talk * * * that she didn't think nothing would come of the case. * * * She was looking for a party by the name of Happy or Jolly with another fellow with a broken hand was the one was supposed to be standing on the running board." She further said concerning the conversation with Miss Miller:

"She specifically said he (Heintz) was not the man that held her up, because he was a short, fat fellow, and the man who held her up was a tall, slim fellow with high cheek bones."

Some of Mrs. Liddell's employees heard this conversation and corroborated what she said.

Conceding that what Mrs. Liddell and her employees said was true, it seems clear enough that Miss Miller considered that the man on the running board was the one who had held her up as he was the one who made the first assault upon her, and she was trying to locate him. She referred always to "the man who held her up." She said Floyd Heintz, or the little fat man, did not "hold her up," and she probably felt that, unless she could find the man who was on the running board, nothing would "come of the case," as the other man was only driving the car.

We have read all this testimony with great care, and our conclusion is that Miss Miller did not intend to convey to Mrs. Liddell and the others the idea that the defendant, Heintz, was not in the automobile at the time the robbery took place.

She told Mrs. Liddell and all the others what she told on the trial, that the man on the running board was the one who assaulted her and that he was a tall slender man with high cheek bones. But she testified on the trial that Heintz, who was driving the car, assisted the other man after the first assault was made.

We have gone into this testimony fully because counsel for defendant, in a most earnest argument before the court, insisted that this is an exceptional case and that a grave injustice had been done the accused. But we find nothing in the case to warrant our departure from the general rule above stated and another one equally well established that the granting of a motion for a new trial on the ground of newly discovered evidence is left largely to the discretion of the trial judge, and that his refusal to grant such motion will not be reversed unless manifestly erroneous. State v. Folden, 135 La. 791, 66 So. 223; State v. Pastor, 111 La. 717, 35 So. 839; State v. Latham, 125 La. 963, 52 So. 113; State. v. Lee, 127 La. 265, 53 So. 559; State v. Thomas, 127 La. 273, 53 So. 562; State v. Johnson, 160 La. 470, 107 So. 309.

The judgment appealed from is affirmed.