198 So. 765

**STATE v. WILBURN.**

No. 35984.

Nov. 4, 1940.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., and Jas. T. Burns, Dist. Atty., of Covington, for the State.

Osceola H. Carter, of Franklinton, for defendant-appellant.

PONDER, Justice.

The defendant, Scott Wilburn, was indicted and convicted of manslaughter and sentenced to a term in the penitentiary of not less than four and not more than twelve years. From the conviction and sentence the defendant has appealed.

During the course of the trial four bills of exceptions were taken, by the defendant's counsel, to the rulings of the trial court.

The defendant's bill of exception No. 1 was taken to the overruling of an objection to the admissibility of the records of the Florida Parishes Charity Hospital of Tangipahoa Parish, La. The records of the hospital were introduced to prove the cause of death of the deceased, Andrew Foster. The hospital record, the complete hospital chart of the deceased, and especially the report of death signed by the Superintendent showed that the deceased died from "peritonitis—partial obstruction—gunshot wound of abdomen." The original report was introduced in evidence with leave of the court to substitute a certified copy thereof, which is now in the record. The hospital records showed that an autopsy was performed on the deceased by Dr. O. D. Thomas, one of the resident doctors in the hospital. The report of death was signed by Dr. A. L. Lewis, Superintendent of the hospital.

Counsel for the defendant takes the position that the hospital records were inadmissible for the reason that the accused had the right to be confronted with the witness, the physician who performed the autopsy, in order that his counsel would have the privilege of questioning the physician regarding the wound, the range of the bullet and all facts found by the physician in the autopsy. In support of this contention counsel cites State of Louisiana v. Tinney, 26 La.Ann. 460, and Article 365 of the Code of Criminal Procedure.

The case of State v. Tinney, supra, is not pertinent because the document sought to be introduced in that case was a certificate of a physician who had performed the autopsy. The instant case does not involve the introduction in evidence of a certificate but the original records of the hospital. Through a long line of jurisprudence in this State beginning with the case of State v. Parker, 7 La.Ann. 83, it has been held that the proces verbal of the coroner's inquest is admissible to prove the

fact and cause of death. The jurisprudence in this respect was reviewed and affirmed in State v. Hayden, 171 La. 495, 131 So. 575, 578. From an examination of the jurisprudence we find that the only instances to the contrary are where some parts of the proces verbal tend to fasten the guilt upon the accused. In every instance where the proces verbal of the coroner's inquest was offered to prove the corpus delicti, the mere physical facts of the death, which did not pertain to the guilt or innocence of the accused, it was held that it did not violate the constitutional guaranty that the accused shall have the right to be confronted with the witness against him. The reason it does not violate the constitutional guaranty is because the proces verbal or any other documentary evidence can in no sense be said to be a witness within the meaning of the constitutional provision. In the case of State v. Hayden, supra, we stated: "There is no law to be found anywhere which declares that the corpus delicti cannot be proved otherwise than by oral testimony from the lips of witnesses, and it would be a strange doctrine to hold that the introduction of documentary evidence to prove the corpus delicti was a violation of the constitutional right of an accused to be confronted with the witnesses against him. The procès verbal, or, for that matter, any other documentary evidence, can in no sense be said to be a witness within the meaning of the constitutional article referred to."

■■ From the record in this case we find that Dr. Lewis, the Superintendent of the Hospital, has the actual supervision, management and control over all the doctors, nurses and records of that institution, and all the official reports made out by the doctors and nurses regarding the condition of the patients, from the time they enter the hospital until they are discharged or die, are made out to the Superintendent. The Superintendent supervises the making of the records. The records were identified in the trial of this case by the Superintendent, Dr. A. L. Lewis. It is the province of the jury to interpret the documentary evidence and to determine its effect. See Wigmore, Sec. 1678, note 1; Jones on Evidence, 2d Ed., p. 684, paragraph 543.

Bill of exception No. 2 was taken to the overruling of an objection made by counsel for the defendant to a question propounded by the District Attorney to the accused while on cross-examination. The District Attorney asked the accused, while on cross-examination, if he himself did not inflict the wound on his back. The accused having answered in the negative, the District Attorney then asked him the following question: "No, but you have a lot of henchmen around your place that could have done it, haven't you?" This question is the basis of the exception.

Counsel for the defendant takes the position that the question assumes as true that which the jury alone are charged with finding, or assumes as proven facts that which has not been proven, thereby violating the provisions of Article 374 of the Code of Criminal Procedure.

■ From the per curiam of the trial judge it appears that the accused had testi-

fied to the cut or wound on his back and that the District Attorney had asked him if he had not inflicted the wound himself. It also appears that the defendant was not arrested until some three or four weeks after the shooting. The defendant did not display the wound in his back until the day after the shooting. The defense urged was self-defense and the defendant contended that the cut was inflicted by the deceased. Counsel contends that the impression was conveyed to the jury that the defendant kept people around his place for the purpose of assisting him in violating the law. From the question propounded it clearly shows that it does not assume a fact but is more in the nature of a query. It does not assume that anyone was violating the law.

■ The defendant's bill of exception No. 3 was taken to a remark made by the District Attorney wherein he referred to the accused's place of business as a "negro joint." Counsel contends that defendant was injured by this remark. In support of this contention counsel cites State v. Morgan, 145 La. 585, 82 So. 711; State v. Brown, 148 La. 357, 86 So. 912; State v. Brice, 163 La. 392, 111 So. 798. From an examination of the per curiam of the trial judge we find that the accused was the proprietor of a saloon and dance hall patronized exclusively by negroes. The accused and deceased were both negroes. Immediately after the District Attorney made the remark the trial court instructed the jury to disregard it and told the District Attorney not to use the expression "negro joint" when referring to the defendant's type of business. The cases cited by counsel are not pertinent because they clearly show that an appeal was made of a prejudicial nature. The word "joint" used herein, as defined by Webster, is a slang expression meaning a gathering place, a hang out, or when used loosely, it means establishment, resort, dwelling, etc. We do not see how the defendant could be injured by the remark. Moreover, immediately after the remark was made, the trial court instructed the jury to disregard it and cautioned the District Attorney not to use the expression again in referring to the defendant's place of business.

Bill of exception No. 4 was taken to the overruling of a motion for a new trial. The motion for a new trial was predicated on bills of exceptions 1, 2 and 3, and in addition thereto, affidavits of two newly discovered eyewitnesses. We find in the per curiam of the trial court that at least four other witnesses testified to the same facts alleged in the motion.

■■ Counsel for the defendant takes the position that the accused is entitled to a new trial even though the evidence might be cumulative for the reason that the District Attorney had suggested to the jury that the defendant was not cut before the shot was fired but either cut himself or had someone else do it afterwards. In support of his contention counsel cites State v. Brown, 121 La. 599, 46 So. 664; Section 3, Art. 509, Code of Criminal Procedure. The authorities cited are not pertinent because in the instant case the evidence set out in the motion for a new trial is cumulative. State v. Hart, 183 La. 443, 164 So. 166; State v. Jones, 163 La. 51, 111 So. 492; State v. Russell, 161 La.

167, 108 So. 324. Moreover, it is largely in the discretion of the trial judge whether a new trial should be granted on the grounds of newly discovered evidence, and unless his refusal to grant the new trial is manifestly erroneous it will not be reversed. State v. Heintz, 174 La. 219, 140 So. 28; State v. Johnson, 160 La. 470, 107 So. 309; State v. Folden, 135 La. 791, 66 So. 223.

For the reasons assigned the conviction and sentence are affirmed.

O'NIELL, C. J., concurs in the result but not in the opinion that the fact that newly discovered evidence would be cumulative is of itself a reason for which a new trial should be refused, and is of the opinion that the question whether such newly discovered evidence might change the verdict, and hence would be a good cause for granting a new trial, is a matter within the sound discretion of the judge in any given case.