**19 So.2d 98**
**STATE v. ALBERTS.**
No. 37485.
June 26, 1944.

Chandler C. Luzenberg, Sr., and Chandler C. Luzenberg, Jr., both of New Orleans, for appellant.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., and J. Bernard Cocke, Dist. Atty., Joseph F. Monie, Asst. Dist. Atty., and Edwin I. Mahoney, all of New Orleans, for appellee.

HIGGINS, Justice.

On December 3, 1942, the accused was indicted for the crime of murder of Amuster Dixon on November 15, 1942. He was arraigned, pleaded not guilty, and was convicted as charged on October 9, 1943. A motion for a new trial was filed on January 10, 1944. The motion was overruled and defendant was sentenced to death by electrocution.

The defendant appealed and relies upon three bills of exception for the annulment of the verdict and sentence. The trial judge signed the bills of exception but died before he could write his per curiams and we are, therefore, without his assistance in that respect.

Bill of exception No. 1 was reserved when the trial judge overruled the defendant's challenge for cause against each juror from the jury panel in Section "B" of the Criminal District Court for the Parish of Orleans, on the ground that a list of the venire was not served upon him. The jury panel of Section "E" of the court where the defendant was tried was exhausted after six of the jurors were selected. The trial judge secured the permission of the judge of Section "B" of the court to use the members of the regular jury panel for that division to report for jury duty in Section "E." In oral argument, counsel for the defendant waived this bill on account of the provisions of Article 201 of the Code of Criminal Procedure and the holding of this Court in State v. McKee et al., 170 La. 630, 128 So. 658, and State v. O'Day, 188 La. 169, 175 So. 838, which authorized the procedure followed by the district judge.

Bill No. 2 was reserved to the offering and filing in evidence by the State of the coroner's proces verbal on the ground that the judge failed to instruct the jury to dis-

regard certain hearsay statements contained therein. The specific words contained in the document objected to are: "Residence 3204 First St.," "Homicide," and "Happened in front of residence."

The assistant coroner who made the autopsy was testifying as a State witness to the cause of death of Amuster Dixon and stated: " * * * In my opinion, the cause of death was hemorrhage and shock following stab wound of the right chest. Weapon entered one inch to the right of the midline at the third interspace, entring the right thorax, penetrating the anterior surface of the upper lobe of the right lung, entering the right side of the pericardium, penetrating the right ventricle of the heart, causing a right hemothorax and a hemopericardium" and that the penetration was "two or more inches." The district attorney then stated: "In connection with the doctor's testimony, the State offers, produces and files in evidence, the proces verbal, which it marks for identification 'State 1'. * * * This proces verbal is offered to show that the death of the deceased was caused by the stab wound as described by the Doctor." The defense attorney made his objection as follows: "To which I object because of the notation on the proces verbal, and I can give your Honor authorities on that * * *." On the invitation of the judge, the defendant's attorney stepped up to the bench and conferred with the court out of the hearing of the jury. The court ruled: "The offer by the District Attorney is made part of the case." Counsel for the accused, reserving a bill, stated: "To which we respectfully reserve a bill, because the body of this report contains matter other than the written opinion of the doctor as to the cause of death, which will be hearsay evidence, and for that reason respectfully reserve a bill, making the proces verbal in its entirety part of the bill, together with the testimony of the doctor * * *."

It will be observed that in making his objection, counsel did not state what part of the proces verbal he considered hearsay evidence and did not request the judge to instruct the jury to disregard it. The record does not show that the proces verbal was read or handed to the jury. The district attorney states that the document was neither read nor handed to the jury and that if either of those two things had happened it would have appeared in the stenographic transcript, which shows that this did not transpire.

Counsel for the defendant concede that the coroner's report was not read to the jury and was not handed to it, but as it was left on a table some four feet in front of the jury, it is possible that some members of the jury might have seen the objectionable statements made in the document. The transcript does not show that this occurred.

The defendant's attorneys cite authorities to the effect that the proces verbal of the inquest in competent evidence of death and its cause, but of no other fact, and if it contains a statement that the accused committed the murder, although it is admitted solely for the purpose of proving the corpus

delicti, unless the judge specifically charged the jury to disregard the part of it that the accused inflicted the fatal wound, the verdict will be set aside. State v. Parker, 7 La.Ann. 83; State v. Duffy, 39 La.Ann. 419, 2 So. 184; State v. Baptiste, 108 La. 234, 32 So. 371; State v. Meyers, 120 La. 127, 44 So. 1008; State v. Joiner, 161 La. 518, 109 So. 51; State v. Taylor, La., Man. Unrep. Cas. 366 and Marr's Criminal Jurisprudence, Vol. 1, Sec. 45, pg. 90.

In the present case the proces verbal does not contain any statement whatsoever which directly or indirectly accused the defendant of stabbing the deceased to death. There is nothing in the document which in any way tends to implicate the accused or anyone else in the killing of Dixon. The facts and the opinion of the coroner as to the cause of death of deceased are evidence of neither the guilt nor innocence of the defendant. Where the coroner's inquest states that the deceased came to his death at the hands of the accused or that the defendant fatally wounded the deceased, it tends to show the guilt of him and as the prisoner at the bar has the right to have the witnesses, who furnished the information to the coroner, sworn and meet them face to face in court and subject them to cross-examination, such a statement is obviously objectionable and highly prejudicial and deprives the defendant of his substantial rights.

■ The residence number and street address "3204 First St." of the deceased is given in the proces verbal under the heading "Inspection of Body Situ" or in its original position. This simply shows where the body was found by the assistant coroner. The word "homicide" standing alone means that a human being was killed by another. It will be observed that the word "criminal" is not placed before "homicide" and therefore there is nothing contained in the report to indicate that the homicide was one involving criminal responsibility. Article 29, Code of Criminal Procedure. "Happened in front of the residence" no doubt refers to the residence of the deceased and to the homicide covered by the report. The State proved by witnesses that the accused, without any provocation whatsoever, attacked the deceased with a knife at First Street and Rex Place and continued to attack him as the defendant retreated and ran a distance of 150 feet to his home, 3204 First Street, where he was fatally stabbed by the defendant on his front porch while he was trying to enter his home to avoid the attack, and that he died at the scene almost immediately thereafter. The defendant offered no countervailing proof.

■■ The record and the statement of the defense counsel in this case negative any idea that the document was ever read or given to the members of the jury. There is no showing that any one of them even glanced over the report, which in no way referred to defendant. The State's offer of the proces verbal was limited to show death and its cause and was competent for that purpose. Article 35 of the Louisiana Code of Criminal Procedure; State v. Hayden, 171 La. 495, 131 So. 575; State v. Joiner, 161 La. 518, 109 So. 51. Therefore, there was no necessity for the judge to instruct

the jury to disregard the objectionable words or hearsay.

■ Even if the report had been read or handed to the jury and considered by the jurors, the objectionable statement that the homicide happened in front of the deceased's residence was immaterial and could not cause injury or prejudice to the substantial rights of the accused because the transcript shows that the defendant's counsel sought to prove only by cross-examination of the State's witnesses that the fight started at the corner of First Street and Rex Place and continued for a half block to the deceased's residence, 3204 First Street. The theory of the defense was " * * * that the killing was done in the heat of blood during a fight and was not murder" and this was "contended in argument before the jury."

The coroner's report does not mention that there was a fight, where it started, who participated in it, who was the aggressor, or who killed the deceased.

■ It is well settled that to warrant the appellate court in setting aside the verdict of the jury, because of the trial court's erroneous ruling, it must appear that the error was so grave as to induce the belief that but for its commission a verdict favorable to the accused might have been returned. State v. Hill, 39 La.Ann. 927, 3 So. 117; State v. Cole, 161 La. 827, 109 So. 505; State v. O'Day, 188 La. 169, 175 So. 838; State v. Taylor, 188 La. 363, 177 So. 239; State v. Augusta, 199 La. 896, 7 So.2d 177; and Article 557 of the Code of Criminal Procedure.

Bill of exception No. 3 was reserved when the judge overruled the defendant's motion for a new trial based on alleged newly discovered evidence. The relevant part of the motion reads, as follows:

"And the defandant respectfully submits to the Court that since his conviction that he has discovered new evidence which if heard by the jury should have caused a different verdict and which shows that he is not guilty of the crime of murder. That this is the testimony of Clarence Russell who resides at No. 3219 Jackson Place in the City of New Orleans. That this evidence shows that there was a mutual combat between the defendant and the deceased immediately before the fatal stabbing that resulted in the death of the deceased. That this evidence shows that the defendant is not guilty of murder. That this witness is within the process of Court and can be procured to testify if a new trial is given. That the defendant did not know that this witness Clarence Russell had seen the deceased fighting with him, until after his conviction. And his failure to know that Clarence Russell was a witness was not because of his not exercising due diligence. And the defendant files with this motion the affidavit of the said Clarence Russell stating the facts set forth in this motion, and that he can testify to, and will testify to.

"Personally appeared before me Paul Alberts, defendant, who being by me duly sworn doth say that all the allegations of fact set forth in this motion are true; and that until after his conviction he did not know that Clarence Russell had seen the fight between him and the deceased, and

could be a witness. And that he has used due diligence."

The affidavit of the alleged newly discovered witness, dated November 29, 1943, is as follows:

"Statement of Clarence Russell residing at 3219 Jackson Place in the City of New Orleans.

. "On November 15th, 1942, the date when it is charged Paul Alberts murdered Dixon, I was at the Lincoln bar, corner of First Street and Rex Place, at about 8:30 p. m. While I was in the barroom I heard there was a fight going on outside of the barroom at the said corner. I went outside and saw Paul Alberts and Amuster Dixon fighting. I saw no knife. I saw Dixon knock Alberts down two or three times. Both then went towards Roman and First street, scuffling all the way. I followed them almost to Roman Street, and I then came back to the barroom. I saw no knife held by either Paul Alberts or by Dixon. About one-half hour after I heard that Dixon had been killed.

"I said nothing about what I had seen until I heard that Paul Alberts was convicted."

Counsel for the defendant in their brief state:

"If the jury believed his (Russell's) evidence, they could have decided legally that the killing was in the heat of blood, and not murder, and would not have returned a capital verdict; and even if they had held that the defendant was technically guilty of murder, that they should have qualified their verdict." (Brackets ours.)

The district attorney contends that the defendant has failed to show that he exercised reasonable diligence to discover and obtain the testimony of Russell before or during the trial, as required by the provisions of Article 512 of the Code of Criminal Procedure, and the holding of State v. Striplin, 165 La. 215, 115 So. 464. He also argues that the record shows there was another witness, Johnny Lawrence, within the process of the court by whom the alleged facts, if true, could have been established by the accused instead of by Russell and that the defendant intentionally failed to use him and, therefore, was not entitled to a new trial on the grounds of newly discovered evidence, citing State v. Bruscatto, 183 La. 542, 164 So. 409, and State v. Raney, 181 La. 638, 160 So. 124.

■ The record shows that Richard Brown, William Nettles and Amuster Dixon, deceased (all colored), were at the corner of First Street and Rex Place between 8:30 and 9 o'clock p. m. A negro girl passed and took offense at some remark made by Richard Brown. She went to the corner of First and Prieur Street, about two and a half blocks away, where she met Johnny Lawrence, Paul Alberts, the accused, and William Henderson, her friend, fourteen years of age. She reported what Brown had said to her and the three young negro men went to the corner of First Street and Rex Place where Henderson (after telling Alberts and Lawrence he could whip Brown and for them to stay out of the fight) engaged Brown in a fist fight. Dixon, the deceased, who was twenty-five years of age, married and had four children, en-

deavored to stop the fight. This difficulty ended with Henderson punching Brown, who ran and took refuge in a church in the neighborhood. In the meantime, Johnny Lawrence had taken out a knife and the accused, resenting the fact that Dixon was attempting to act as peace-maker, grabbed the knife from Lawrence's hand and attacked the deceased by making thrusts at him. Dixon backed across the street, trying to ward off the blows and fell backward in the ditch where the defendant continued to strike at him with the knife. When Dixon regained his feet, he ran towards his home at 3204 First Street a half block away, pursued by Alberts. The deceased's wife and mother, who had his four children in the automobile with them and had been visiting a friend, by coincidence, appeared at the scene near their home as the accused was pursuing Dixon. The deceased's wife, who had an infant in her arms, attempted to stop the defendant but he continued on, saying that he was going to kill that ————. The deceased's mother also screamed for the accused to stop. Dixon, who was unarmed, rushed upon his front porch followed by the accused but due to the fact that the front door was locked, he was unable to enter the house and as he turned to face the defendant, he was fatally stabbed by him. Whereupon, the accused ran away and before the ambulance arrived, Dixon died. The State established these facts by the testimony of William Henderson, William Nettles and the deceased's wife and mother. Although Johnny Lawrence was available as a witness and was identified in the courtroom, he was not placed on the stand by either the State or the defendant. Henderson testified that after the stabbing, he learned the deceased was killed and ran away, and that later he joined the accused and Johnny Lawrence and went to a bowling alley in Jefferson Parish. There is nothing in the motion or affidavit to show that the accused attempted to learn from Lawrence or Henderson that there were other witnesses present at the time of the fight and killing. The motion and affidavit annexed to it do not set forth any facts to show why the accused by the use of due diligence could not have discovered that Clarence Russell was present at the time he states he was. there. We are of the opinion that the defendant has failed to show under the facts and circumstances of this case that he did exercise due diligence and failed to discover the alleged new witness before or during the trial.

Even if he had exercised due diligence, it appears that the newly discovered evidence is merely cumulative and tends only to impeach the credibility of other witnesses at the trial. It will be observed that Russell, in his affidavit, shows he was not present when the fight started but was inside of the bar room and, therefore, he does not know what caused the trouble, who started it, and who was the aggressor. The last part of the affidavit shows that he was not present when Paul Alberts stabbed Dixon on his front porch at 3204 First Street, because he states he went back to the bar room after following them almost to Roman Street and a half hour later he heard that Dixon had been killed. The

part of the affidavit which shows that there was a fight is merely cumulative of what the State witnesses said and the statement in the affidavit that he saw no knife does not necessarily mean that Alberts did not have a knife but merely that the witness did not see it. However, if he means to say that Alberts did not have a knife, it would simply be evidence tending to contradict and impeach the State witnesses.

■ Under the express provisions of Article 511 of the Code of Criminal Procedure, such newly discovered evidence is not sufficiently material to justify the granting of a new trial. The provisions of that article are as follows:

"To entitle the accused to a new trial on the ground of newly discovered evidence, it must affirmatively appear that notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial, but has been discovered since; that said evidence is not merely cumulative; that it does not merely corroborate or impeach the credibility or testimony of any witness examined on the trial; that it is so material that it ought to produce a different result than the verdict reached, and that it is admissible. These allegations must be recited in the motion and be sworn to by the accused."

To the same effect, see also State v. Robertson, La., Man.Unrep.Cas. 257; State v. Kennedy, La., 8 Rob. 590; State v. Simpson, 184 La. 190, 165 So. 708; State v. Wilburn, 196 La. 113, 198 So. 765; State v. Heintz, 174 La. 219, 140 So. 28; State v. Williams, 176 La. 481, 146 So. 29; State v. Davis et al., 178 La. 203, 151 So. 78;

State v. Capaci, 179 La. 462, 154 So. 419; State v. Ybarzabal, 180 La. 653, 157 So. 379, and State v. Raney, 181 La. 638, 160 So. 124.

In State v. Poole, 156 La. 434, 100 So. 613, a new trial was asked for on the ground of newly discovered witnesses who would swear that immediately before the killing they heard the deceased and two of his witnesses planning to whip the accused. The motion was held properly denied because the evidence showed that the defendant was the aggressor.

In State v. Carter, 168 La. 807, 123 So. 332, the court held that the defendant was not entitled to a new trial on the grounds of newly discovered evidence, where it appeared that he had a fair trial and the judgment was sustained by the law and the evidence.

In State v. Heintz, 174 La. 219, 140 So. 28, 31, in upholding the conviction and sentence of the trial judge and denying the motion for a new trial on the ground of newly discovered evidence, the Court concluded: "* * * we find nothing in the case to warrant our departure from the general rule above stated and another one equally well established that the granting of a motion for a new trial on the ground of newly discovered evidence is left largely to the discretion of the trial judge * * *." State v. Simpson, 184 La. 190, 165 So. 708.

In State v. Corneille, 153 La. 929, 96 So. 813, the defendant was convicted of the crime of manslaughter and sentenced, and, on the basis of alleged newly discovered

evidence, sought a new trial. In denying a new trial, we held that the paramount test of importance of newly discovered evidence is whether it would be likely to produce a different result on another trial. State v. Bradley, 166 La. 1010; 118 So. 116; State v. Tapie, 173 La. 780, 138 So. 665.

It is our opinion that the motion for a new trial was properly overruled.

For the reasons assigned, the verdict of the jury and the sentence of the district court are affirmed.

PONDER, J., takes no part.

O'NIELL, C. J., (concurring in the decree).

I concur in the ruling on bill of exception No. 2 because the memorandum or notation on the proces verbal of the coroner's inquest, "Homicide—Happened in front of residence," was not of such importance that it might have affected the verdict if the jurors had observed the memorandum or notation and had connected it with the notation in the proces verbal that the residence of the deceased was 3204 First Street. The argument for the defendant that but for this notation on the proces verbal of the coroner's inquest the jury might have found the defendant guilty of manslaughter, instead of finding him guilty of murder, has little or nothing to support it. It is conceded that this memorandum or notation on the proces verbal was not read to the jury, and it is not probable that any juror read it.

I concur in the ruling on the bill of exception taken to the overruling of the motion for a new trial, because the alleged newly discovered evidence, outlined in the affidavit of Clarence Russell, was not of sufficient importance to be apt to affect the verdict of the jury. The difficulty between Paul Alberts and Amuster Dixon, which the supposed newly discovered witness saw, occurred half an hour before he heard that Dixon was killed. In my opinion there was not a sufficient showing that Clarence Russell was in fact a newly discovered witness to justify setting aside the verdict. I do not concur, however, in the opinion that a new trial should be refused in any or every case where newly discovered evidence is merely cumulative, even though it appears that the newly discovered evidence if believed by the jury ought to affect the verdict. The fact that a defendant accused of a crime may have one witness to prove a material fact in his favor is no reason why he should be denied the benefit of other witnesses to prove the same fact. The doctrine to the contrary if carried to its logical consequence might result in a denial of justice and of due process of law.