128 So.2d 655

STATE of Louisiana

v.

Robert GARNER.

No. 45399.

March 20, 1961.

Rehearing Denied April 24, 1961.

Matthew S. Braniff, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Benjamin E. Smith, Asst. Dist. Atty., New Orleans, for appellee.

SUMMERS, Justice.

James Robinson (Robertson) and his wife, Mary, operate a saloon at 2012 Erato Street, New Orleans. On December 6, 1958, Mary Robinson placed a half-pint bottle of whiskey on the bar at the request of customers then patronizing the establishment. Robert Garner and Frank Hood, a companion, were also customers in the bar, though disassociated from the others, and Garner proceeded to help himself to some of the whiskey from the half pint. He was admonished not to do so by Robinson or his wife whereupon words ensued between them and Robinson ordered Garner and Hood to leave the place, which they did. Hood remained outside but Garner re-entered the saloon with a drawn knife and attempted to climb over the bar, obviously to attack Robinson with the weapon. Two eyewitnesses, Joe Brown and Edward Brown, in the saloon at the time,

and witnessing the incident, saw Garner with the knife and saw him "jumping over", or attempting to "jump over" or climb over the bar or counter to get at Robinson. These witnesses hollered to Robinson to beware. Robinson, seeing Garner coming at him or attempting to get to him over the bar and being near a cash register where he kept a revolver, seized the revolver and fired at Garner, the bullet missing Garner and striking one Junior Carson, a bystander and patron, killing Carson almost instantly. Garner then left the scene for his home where he was later arrested.

Garner was first charged with the murder of Carson on the State's theory of the felony murder doctrine. This Court found that position untenable and so ruled in State v. Garner, 238 La. 563, 115 So.2d 855. Garner was charged with the attempt to murder Robinson, tried, and found guilty of attempt to commit manslaughter.

During the course of the trial there were no bills of exceptions taken. On July 5, 1960, after conviction and before sentence, Garner's present counsel filed a motion for a new trial having previously, on June 16, 1960, in anticipation thereof, filed an application for a writ of subpoena duces tecum directed to the Charity Hospital of New Orleans to produce certain records covering the admission and treatment of Mary Robinson for a gunshot wound. The alleged purpose of the writ of subpoena duces tecum was to establish that James and Mary Robinson, as State's witnesses, testified falsely during the trial on material facts. The application for the writ of subpoena duces tecum was denied. It is being asserted, too, in connection with the motion for a new trial, that these hospital records, being newly discovered, are a valid basis for a new trial. In addition to alleging the denial of the subpoena duces tecum, the motion for a new trial represents that intent is an essential element of the crime of attempt to commit manslaughter and there was a total lack of evidence to próve all of the essential elements of the crime of attempted manslaughter and particularly that of intent. The motion for a new trial was denied. Bills of exceptions were reserved to these rulings. On July 18, 1960, Garner was sentenced to imprisonment in the State Penitentiary at hard labor for two years, and a motion for suspensive appeal was granted.

The correctness of the ruling of the Trial Court necessarily involves an inquiry into the evidence sought by the writ of subpoena duces tecum and a determination of whether the evidence sought by that subpoena is within that category which, if produced, would be recognized by statute to form the basis for the granting of a new trial. By the Louisiana Code of Criminal Procedure in such cases we are instructed that, "A new trial ought to be granted: * * * (3) Whenever since verdict new material evidence has been discovered that

could not have been discovered with reasonable diligence before or during trial, * * *" (Art. 509, Louisiana Code of Criminal Procedure, LSA-R.S. 15:509), and "To entitle the accused to a new trial on the ground of newly discovered evidence, it must affirmatively appear that notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial, but has been discovered since; that said evidence is not merely cumulative; that it does not merely corroborate or impeach the credibility or testimony of any witness examined on the trial; that it is so material that it ought to produce a different result than the verdict reached, and that it is admissible. These allegations must be recited in the motion and be sworn to by the accused." Art. 511, Louisiana Code of Criminal Procedure, LSA-R.S. 15:511.

The application for the writ of subpoena duces tecum requested:

"The entire record, including the charts and admission and discharge cards of Mary Alice Robertson (CF), 2012 Erato St., New Orleans, Louisiana, and the colored accidents Service Book covering the period from May 16, 1955 to May 31, 1955, and more particularly, all of the contents of file No. I43–112843."

Notwithstanding the overruling of the motion for a new trial, and immediately thereafter, the Court below issued an order directing the Record Librarian of Charity Hospital to furnish to counsel for Garner information concerning the admission and treatment of the State witness, Mary Robinson, and in response thereto a letter was addressed to counsel by the Director of the hospital which furnished the facts requested. This information revealed that on May 21, 1955, Mary Robinson was admitted to the hospital for the treatment of a gunshot wound, and that she was accompanied on that occasion by her husband, James.

The testimony of Mary Robinson is that she was never shot by her husband or by anyone and the testimony of James is to the effect that he knew nothing of his wife's being shot until he arrived home on the night of the incident, when she informed him of the fact that she sought treatment at Charity Hospital for the wound and the bill for that service was four dollars. The examination of these two witnesses by counsel for Garner unquestionably discloses that during the course of the trial he was aware of the fact that Mary had been shot in the leg and had sought treatment at Charity Hospital for the wound. An application for the writ of subpoena duces tecum was available to counsel at that time in order that he might, by production of the hospital records, establish the falsity of Mary's testimony, had its need been indicated to be essential to Garner's defense.

The questioning of the witness, James Robinson, revealing as it does that the accused had information concerning the gunshot wound of Mary, it occurs to us that the subpoena might have been resorted to even prior to the trial examination if diligence had been exercised to ascertain where she received medical attention. The falsity of her testimony, however, was clearly established by the testimony of her husband, James, without the necessity of the hospital records. Consequently, the jury was cognizant of the fact that Mary's testimony was false insofar as that fact was concerned. The Judge in his per curiam observed that the testimony of James Robinson established quite dramatically the falsity of his wife's testimony and the impact of the testimony of James Robinson upon the jury was of as much force as the hospital record itself would have been, if the record had been produced at the trial. The husband's version is merely corroborated by the hospital records for he testified that his wife had incurred the gunshot wound and did go to Charity Hospital for treatment. The hospital record would have disclosed essentially nothing more than the facts to which James Robinson testified. The record reveals, too, that the gunshot wound incurred by Mary was an incident distantly remote in point of time to the crime with which the jury was concerned,[1] and did not involve the accused Garner. We are convinced that this precludes the conclusion that the fact of the gunshot wound incurred by Mary was newly discovered evidence within the contemplation of the quoted provisions of the Louisiana Code of Criminal Procedure for the fact of the wound was known during the trial and due diligence would have made timely production of the hospital records possible.[2] This was the finding of the trial judge and his discretion has not been abused. The law makes it incumbent upon the accused to show that due diligence was exercised in an effort to discover the evidence in question and that those efforts were futile. (See State v. Saba, 203 La. 881, 14 So.2d 751 and cases cited therein.) From the foregoing, it is quite apparent that there could be no showing of the exercise of due diligence to discover the evidence in question for it was in fact known during the trial if not prior thereto. Furthermore, the testimony establishes that Garner's wife, a witness for the accused, knew during the trial that Mary had been wounded on the occasion mentioned.

"The discretion vested in the trial judge in passing on a motion for a new

---

1. The crime for which Garner was convicted herein was committed on December 6, 1958. Mary incurred her gunshot wound on May 16, 1955.

2. State v. Nash, 169 La. 947, 126 So. 434; State v. Davis, 178 La. 203, 151 So. 78; State v. Saba, 203 La. 881, 14 So. 2d .751; State v. Alberts, 206 La. 213, 19 So.2d 98; State v. Richard, 223 La. 674, 66 So.2d 589; 6 La.L.Rev. 669.

trial based on the ground of newly discovered evidence in a criminal case is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of their effect, if they are believed to be true. The presumption is that the trial judge in ruling upon the motion for a new trial properly exercised his discretion and his ruling denying the motion will not be disturbed by the appellate court unless the discretion is arbitrarily abused." See State v. Saba, supra.

We concur, too, with the per curiam of the trial judge in which he states that its production would not have produced a different result than the verdict reached.

Aside from these considerations, which were ably presented by the trial judge in his per curiam, we entertain serious doubt that the allegation in the motion for a new trial recited what the law requires such a motion to recite; but we have, nevertheless, deliberately reviewed and carefully considered the contentions of the accused with a view to according to him an adjudication of those defenses he has advanced, but we have found these defenses wanting. There has been no deprivation of any legal right. A fair trial was had below.

Next is the contention that the motion for a new trial should have been granted for *intent* is an essential element of the crime of attempt to commit manslaughter and there was a total lack of evidence to prove all of the essential elements of the crime of attempted manslaughter and particularly that of intent.

It is considered that the quotation of the pertinent portions of the provisions of the articles of the Louisiana Criminal Code is necessary for clarity in determining the issue.

Article 27 provides:

"Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; * * *"

Article 31 provides:

"Manslaughter is:

"(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. * * *"

Article 30 provides:

"Murder is the killing of a human being:

"(1) When the offender has a specific intent to kill or to inflict great bodily harm; * * *"

It is apparent from the foregoing that an attempt must involve as an essential element a specific intent and that by reading Article 30 in connection with Article 31(1), as we are directed to do by Article 31(1), intent is revealed to be an element of manslaughter as defined under Article 31(1) [3], although the presence of provocation reduces the killing (or attempted killing) to manslaughter.

"Criminal intent may be specific or general:

"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Article 10 of Louisiana Criminal Code.

With reference to the requirement for proving intent, LSA–R.S. 15:444 provides:

"If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act; * * *"

and LSA–R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, *for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances* of the transaction." (Italics ours.)

We are satisfied under the law and the facts that the intent necessary to constitute the crime of which Garner was convicted could be properly inferred from his actions and the circumstances of the case and that the verdict of the jury was proper.

We are limited in the scope of our review of criminal matters by Article 7, Section 10, of the Constitution of this State, LSA, to "questions of law alone". We are admonished, too, that in matters of this nature we should not be unmindful of the fundamental right accorded to the jury under our law to determine the question of guilt or innocence, which in this case the element of intent directly affects. This right should be jealously guarded by our courts. It is assured by Article 19, Section 9, of our Constitution in this language:

"The jury in all criminal cases shall be the judges of the law and of the

---

3. Article 31(2), however, specifically negatives the element of intent and this decision does not imply that attempted manslaughter could be found under Article 31(2). We understand from this Article that there are two types of manslaughter, one requiring intent where provocation exists and the other not requiring intent to kill. (See Reporter's Comment under Article 31, Louisiana Criminal Code. Also State v. Harper, 205 La. 228, 17 So.2d 260; 18 Tul.L. Rev. 640; 19 Tul.L.Rev. 487; 21 Tul. L.Rev. 283; 21 Tul.L.Rev. 551; 6 La. L.Rev. 175; 8 La.L.Rev. 282).

facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."

Although it is recognized and stated in State v. Nomey, 204 La. 667, 16 So.2d 226, 227, that a proper interpretation of the foregoing constitutional provisions permits a complaint that a conviction which is based upon no evidence at all "presents the question of law of whether it be lawful to convict an accused without any proof whatsoever as to his guilt", it is firmly established and the Courts must likewise adhere to the proposition that "It is only when there is no evidence at all upon some essential element of the crime charged that (the Court) may set aside a verdict * * *." State v. Holder, 159 La. 82, 105 So. 232, 233. See, also, State v. McDonell, 208 La. 602, 23 So.2d 230, and authorities cited therein. But, "where there is *some* evidence to sustain the conviction, no matter how little, this court cannot pass upon the *sufficiency* thereof. That comes within the exclusive province of the trial judge and jury". State v. Gani, 157 La. 231, 102 So. 318. See, also, State v. McDonell, supra, and authorities cited therein.

Unquestionably there was some evidence here which formed a basis for a finding of specific intent by the jury. If charging a person in a threatening manner and trying to get at him with a knife over a bar is not motivated by a specific criminal intent to kill we fail to envision a set of facts which could more clearly evince such intent. The action of Garner was aggressive and forceful and the would-be-assailant had in his possession and within his control the weapon required to accomplish the killing, all of which speaks in clear and unmistakable tones of his specific intent. Though subjective and itself unseen and unheard, the requisite intent is manifested by the actions of the accused here.

The conviction is affirmed.

128 So.2d 660